Gabrielli, J.
Presented for our consideration, for the first time, is the question of what effect, if any, the failure of a plaintiff to wear a seat belt has upon his right to recovery in an action for personal injuries incurred in a motor vehicle accident. The plaintiff appeals, by leave of this court, from an order of the Appellate Division, Third Department (42 A D 2d 428), unanimously affirming a judgment of the Supreme Court, Madison County (Zeller, J.), which dismissed the complaint following a jury verdict of no cause of action.
The facts are simply stated. At approximately 6:30 p.m. on the evening of March 10, 1970, the plaintiff was operating her 1964 Ford convertible in an easterly direction on a two-lane, macadam highway known as New York State Route 31 toward her son’s home located on an intersecting road. The weather was cool, clear and dry; and the visibility, though it was near dusk, was good. Route 31 is a 24-foot-wide divided highway with a speed limit of 50 miles per hour. Plaintiff testified that when she neared the intersection, she reduced the speed of her automobile from 40 to 20 miles per hour and simultaneously turned on her left directional indicator; and as she was doing this, plaintiff looked in her rear view mirror and saw a set of headlights 11 way back ’ ’; she then neared the center line *447 of Route 31, and, while she was turning left to enter Camp Road, was struck in the westbound lane of Route 31 by the defendants’ tractor-trailer which was in the process of attempting to pass her automobile. The right front fender of the tractor-trailer came into contact with the left front portion of the plaintiff’s automobile, and, as a result of the initial impact, the plaintiff was ejected from her vehicle, which then rolled over her in such a way that her legs were pinned under the left rear wheel. Although the plaintiff’s automobile was equipped with seat belts, she was not using the device at the time of the accident.
The tractor-trailer driver’s account of the accident differed in several significant respects from plaintiff’s version. He testified that he first noticed the plaintiff’s vehicle when it was about one-quarter mile ahead of him, and that at a point, approximately 150 yards from the plaintiff’s automobile, he moved into the opposite or westbound lane. At this time, the plaintiff was driving in the middle of the eastbound lane and had not yet put on her directional signal. The truck driver further testified that he saw no brake lights on the plaintiff’s vehicle at any time prior to the accident, that he was only 25 to 30 feet from the plaintiff’s vehicle when she put on her left directional indicator, and that he flicked his headlights to low beam and back to high beam as a signal to plaintiff that he was about to pass her vehicle. Although the plaintiff was not sure whether she made a gradual or an abrupt turn, the defendant driver stated that she “ cut right across in front ” of him, taking a “ sharp lefthand turn ”. In an effort to avoid the ensuing collision, the truck driver swerved his vehicle toward the left shoulder of the road, but the right front fender of his vehicle nevertheless came in contact with the left side of the plaintiff’s automobile.
Upon the trial defendants called, as an expert witness, a professor of mechanical and aerospace engineering, who had also been previously employed as a consulting engineer in the field of accident analysis and reconstruction. He testified to an extensive background in the use of seat belts in both the aircraft and automotive industries. Over plaintiff’s objection, the expert was permitted to give his opinion that “ The seat belt is an extremely effective device in either preventing or *448 alleviating injury.” More specifically, he stated that the seat belt is the most effective improvement that has been made in the automobile in the last 20 years. After viewing photographs of the vehicles and the accident scene, the expert opined that had the plaintiff been wearing a seat belt, she would not have been ejected from her automobile; and that had she not been ejected, she probably would not have been seriously injured. When asked on cross-examination if the fact that plaintiff was ejected from her automobile might have saved her life, the engineer stated that ‘[1] the worst thing that could have happened to her [was] being ejected from the vehicle.”
Having permitted the defense expert to testify as to what would have probably happened to the plaintiff had she used the seat belt available to her, the trial court charged the jury as follows: “If you find that a reasonably prudent driver would have used a seat belt, and that she would not have received some or all of her injuries had she used the seat belt, then you may not award any damages for those injuries you find she would not have received had she used the seat belt. The burden of proving that some or all of her injuries would not have been received had she used the seat belt rests upon the [defendants] ”. Although the plaintiff’s counsel took no exception to the trial court’s charge, he requested the court to charge the jury “ that there isn’t any law in the State of New York that requires a person to wear a seat belt or to anticipate the happening of an accident.” The trial court so charged.
When called upon to resolve the conflicting testimony and to decide the validity of the plaintiff’s personal injury action, her husband’s derivative claim and the defendant trucking company’s. property damage counterclaim, the jury returned verdicts of no cause of action against both plaintiffs and the trucking company’s counterclaim as well. Only the plaintiff operator has appealed.
In unanimously affirming the judgment of the trial court, the Appellate Division found that the Trial Judge had correctly charged the law of negligence and contributory negligence, and then concluded as follows: [1] ‘ The jury, having determined that none of the parties had a cause of action, it is clear that at the very least the jury found negligence on the part of plaintiff and defendants. On this verdict, the jury never reached *449 the issue of damages and thus never considered the seat belt defense which was raised and submitted to it in mitigation of damages.” However, the Appellate Division then proceeded to state that the charge relating to the doctrine of avoidable consequences would have been error if the issue of liability had been resolved in favor of the plaintiff. In reaching this determination, it noted that allowing the triers of fact to apportion damages for nonuse of an available seat belt “ would permit the jury to engage in sheer speculation and apply an apportionment similar to computing damages under comparative negligence ” (42 A D 2d 428, 430-431, supra). Although we are in accord with the Appellate Division’s conclusion that the verdicts indicate that the jury found negligence on the part of the plaintiff driver and the defendants as well and, therefore, never considered the issue of damages, we are unable to agree with its determination that the trial court’s charge would have been error had the issue of liability been resolved in favor of the plaintiff.
Despite the fact that the “ seat belt defense ”, as it is commonly known, has received extensive examination in other jurisdictions as well as several legal periodicals, it is raised as a matter of first impression in this court.[1] We today hold that nonuse of an available[2] seat belt, and expert testimony in regard thereto, is a factor which the jury may consider, in light of all the other facts received in evidence, in arriving at its determi *450 nation as to whether the plaintiff has exercised due care, not only to avoid injury to himself, but to mitigate any injury he would likely sustain (Mount v. McClellan, 91 Ill. App. 2d 1). However, as the trial court observed in its charge, the plaintiff’s nonuse of an available seat belt should be strictly limited to the jury’s determination of the plaintiff’s damages and should not be considered by the triers of fact in resolving the issue of liability. Moreover, the burden of pleading and proving that nonuse thereof by the plaintiff resulted in increasing the extent of his injuries and damages, rests upon the defendant. That is to say, the issue should not be submitted to the jury unless the defendant can demonstrate, by competent evidence, a causal connection between the plaintiff’s nonuse of an available seat belt and the injuries and damages sustained (Kircher, Seat Belt Defense — State of the Law, 53 Marq. L. Rev. 172, 186).
The cases from other jurisdictions suggest that three approaches have been advanced by defendants in support of the seat belt defense: first, it is urged that a plaintiff’s nonuse of an available seat belt constitutes negligence per -se which would, of course, entirely preclude the plaintiff from recovery; secondly, it is argued that, in failing to make use of an available seat belt, the plaintiff has not complied with the standard of conduct which would have been pursued by a reasonable man under similar circumstances, and, therefore, the plaintiff may be found to have been contributorily negligent; and, thirdly, it is asserted that by not fastening his seat belt the plaintiff may, under the circumstances of the particular ease, be found to have acted unreasonably and in disregard of his own best interests, and, thus, should not be permitted to recover damages for those injuries which a seat belt would have obviated (see, Kircher, Seat Belt Defense — State of the Law, 53 Marq. L. Rev. 172,173). We reject both the first and the second of these approaches; and, with the modifications made herein, we accept the third.
Since section 383 of the Vehicle and Traffic Law does not require occupants of a passenger car to make use of available seat belts, we hold that a plaintiff’s failure to do so does not constitute negligence per se. Even in jurisdictions in which some form of the seat belt defense has been adopted, the negligence per se approach has been rejected because legislation, *451 which, does not require use of the device, “ cannot ibe considered a safety statute in a sense that it is negligence per se for an occupant of an automobile to fail to use available seat belts.” (Bentzler v. Braun, 34 Wis. 2d 362, 385.) Likewise, we do not subscribe to the holdings of those cases in which the plaintiff’s failure to fasten his seat belt may be determined by the jury to constitute contributory negligence as a matter of common law (Bentzler v. Braun, supra; Sams v. Sams, 247 S. C. 467; Mays v. Dealers Tr., 441 F. 2d 1344). In our view, the doctrine of contributory negligence is applicable only if the plaintiff’s failure to exercise due care causes, in whole or in part, the accident, rather than when it merely exacerbates or enhances the severity of his injuries (Dillon v. Humphreys, 56 Misc 2d 211, 214; Abrams v. Woods, 64 Misc 2d 1093, 1094; Noth v. Scheurer, 285 F. Supp. 81, 85). That being the case, holding a nonuser contributorily negligent would be improper since it would, impose liability upon the plaintiff for all his injuries though use of a seat belt might have prevented none or only a portion of them.[3] Having disapproved of these two variations of the seat belt defense, we address ourselves to the" defendants’ contention that nonuse of an available seat belt may be considered by the jury in assessing the plaintiff’s, damages Where it is shown that the seat belt would have prevented at least a portion of the injuries.
As Prosser has indicated, the plaintiff’s duty to mitigate his damages is equivalent to the doctrine of avoidable conse- - quences, which precludes recovery for any damages which could have been eliminated by reasonable conduct on the part of the plaintiff (Prosser, Torts [4th ed.], § 65, pp. 442-424). Traditionally both of these concepts have been applied only to postaccident conduct, such as a plaintiff’s failure to obtain medical treatment after he has sustained an injury. To do otherwise, it has been argued, would impose a preaccident obligation upon the plaintiff and would deny him the right to assume the due care of others (Kleist, Seat Belt Defense — An Exercise in Sophistry, 18 Hastings L. J. 613, 616). We concede that the opportunity to mitigate damages prior to the occurrence *452 of an accident does not ordinarily arise, and that the chronological distinction, on which the concept of mitigation damages rests, is justified in most cases. However, in our opinion, the seat belt affords the automobile occupant an unusual and ordinarily unavailable means by which he or she may minimize his or her damages prior to the accident. Highway safety has become a national concern; we are told to drive defensively and to “ watch out for the other driver ”. When an automobile occupant may readily protect himself, at least partially, from the consequences of a collision, we think that the burden of buckling an available seat belt may, under the facts of the particular case, be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity.
At this juncture, there can be no doubt whatsoever as to the efficiency of the automobile seat belt in preventing injuries.[4] Simply stated, “ [t]he seat belt, properly installed and properly worn, still offers the single best protection available to the automotive occupant exposed to an impact.” (Synder, Seat Belt as a Cause of Injury, 53 Marq. L. Rev. 211). Furthermore, though it has been repeatedly suggested that the seat belt itself causes injury, to date the device has never been shown to worsen an injury, but, on the contrary, has prevented more serious ones (p. 213). The studies on the subject overwhelmingly indicate that the seat belt fulfills its primary purpose of restraining the automobile occupant during and immediately after the initial impact; in so doing, it significantly reduces the likelihood of ejection and frequently prevents “ the second collision ” of the occupant with the interior portion of the vehicle.
Another objection frequently raised is that the jury will be unable to segregate the injuries caused by the initial impact from the injuries caused by the plaintiff’s failure to fasten his seat belt. In addition to underestimating the abilities of those trained in the field of accident reconstruction, this argument fails to consider other instances in which the jury is *453 permitted to apportion damages (i.e., as between an original tort-feasor and a physician who negligently treats the original injury)." Furthermore, if the defendant is unable to show that the seat belt would have prevented some of the plaintiff’s injuries, then the trial court ought not submit the issue to the jury.
In the instant case, the plaintiff was ejected from her car, which subsequently rqlled over her body causing a broken leg.[5] The defense expert stated that she would have remained in the car had she used her seat belt, and that she would have sustained only minor injuries had she not been ejected. On cross-examination, plaintiff’s counsel was unsuccessful in his attempts to undermine either of these opinions of the expert. In view of what has previously been stated, we hold that the trial court properly submitted this issue to the jury.
For the reasons stated, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Jones, Wachtlbr, Babin and Stevens concur.
Order affirmed, without costs.

. In Bartlett v. State of New York (40 A D 2d 267, mot. for lv. to app. den. 32 N Y 2d 610), the seat belt defense was raised by the defendant, but there was no proof, expert or otherwise, tending to establish the manner or degree to which the use of a seat belt would have reduced the injuries sustained by the claimant.

. It has been intimated that reducing recovery solely in cases of nonuse of an available seat belt creates an invidious distinction (Robinson v. Bone, 285 F. Supp. 423, 424). However, as one author has asserted, the distinction is not only justified but rational since the effort entailed in using an available seat belt is far less than the expense of arranging to have seat belts installed (see Comment, Self-Protective Safety Device: An Economic Analysis, 40 U. Chi. L. Rev. 421, 439). Furthermore, the distinction- will eventually become academic in as much as section 383 of the Vehicle and Traffic Law requires seat belts to be installed for each passenger seat position in all new passenger cars sold or registered in New York after January 1, 1968. (See, also, 23 C. F. R., § 255.21 [1968] [Standard 208].)

. Not involved in this case, and not considered, is an issue in which the failure to wear a seat belt is an alleged cause of the accident.

. See Huelke, Practical Defense Problems — The Expert’s View, 53 Marq. L. Rev. 203; Miller, Crashworthiness of Automobiles, Scientific Am., Feb., 1973, at p. 81; Snyder, Seat Belt as a Cause of Injury, 53 Marq. L. Rev. 211 and studies referred to in footnotes 1-5 thereof.

. Full body ejection has been estimated to increase the likelihood of a fatality by nearly 500% (see Bowman, Practical Defense Problems — The Trial Lawyer’s View, 53 Marq. L. Rev. 191,196).