*487 OPINION OF THE COURT
John L. Bell, J.
In this claim for wrongful death, claimant contends that defendant failed to maintain proper drainage and guide rails adjacent to State Route 172 in the Town of Bedford, Westchester County, and that such failure was a proximate cause of fatal injuries sustained by his wife, Rosemary P. Karczmit, in a motor vehicle accident. Resolving the claim involves numerous factual and legal issues. Ostensibly, certain of the legal issues are matters of first impression.
I. FACTUAL BACKGROUND
On January 5, 1990, Mrs. Karczmit was traveling alone in her 1989 Mazda 626 in an easterly direction on Route 172, a two-lane highway. At approximately 8:40 A.M., she lost control of the car while negotiating a slight curve in the highway. The car crossed the westbound lane of Route 172 and left the highway in an area where an old guide rail system was located in front of trees, a utility pole and a slope. The car proceeded through the guide rails, striking, among other things, a utility pole and a tree, and it came to rest at the bottom of the slope on the north side of Route 172. The accident occurred approximately 300 feet west of the intersection of Route 172 and Old Corner Road. The autopsy report revealed that as a result of the accident Mrs. Karczmit suffered, inter alla, complete transection of the medulla; hinge fracture extending in front of both petrosal bones of the skull; laceration of the dura above both petrosal bones; hemorrhage in the right frontoparietal, frontotemporal and occipital areas, and the left occipital, temporal area; subarachnoid hemorrhage over both cerebral hemispheres; rib fractures and contusions of the intestines. The cause of death was attributed to skull and rib fractures, transection of the medulla, intermeningeal hemorrhages, and contusions of the intestines. Death occurred before eyewitnesses to the accident reached the deceased’s vehicle.
Claimant asserts that improper drainage contiguous to Route 172 caused a patch of ice to form on the eastbound lane of the road and that the ice caused Mrs. Karczmit to lose control of her car. He further contends that after his wife’s car crossed Route 172, it impacted guide rails that were not properly maintained with the result that the guide rails failed to prevent the car from leaving the highway and striking a *488 tree and utility pole. Although defendant denies liability, it argues that if liability is found damages should be diminished due to the alleged failure of Mrs. Karczmit to utilize an available seat belt.
[Note: Sections II-V of this opinion have been omitted for publication purposes. In such sections, the court (1) rejected an allegation of improper drainage on the State highway, (2) found the State liable for inadequate guide rails, (3) assessed comparative negligence of claimant at 50%, and (4) assessed damages, prior to reduction for comparative negligence, at $6,420.25 in special damages, $40,327 in past economic damages, and $436,097 in future economic damages.]
VI. MITIGATION OF DAMAGES — WHETHER CLAIMANT WAS WEARING AN AVAILABLE SEAT BELT
Defendant seeks to mitigate damages due to the alleged failure of Mrs. Karczmit to use an available seat belt (see, Vehicle and Traffic Law § 1229-c [8]). Two issues that must be addressed as regards the seat belt defense are (1) whether Mrs. Karczmit was wearing an available seat belt and, if not, (2) the effect of the failure to wear a seat belt in a claim for wrongful death. Each issue necessarily involves not only a factual determination but also legal analysis. Initially, it is necessary to consider the development of the law as regards the seat belt defense before making a factual determination as to whether the deceased was wearing an available seat belt.
Although some jurisdictions analyze the seat belt issue as an element of comparative or contributory negligence (see generally, Annotation, Nonuse of Automobile Seatbelts as Evidence of Comparative Negligence, 95 ALR3d 239; Annotation, Automobile Occupant’s Failure to Use Seat Belt as Contributory Negligence, 92 ALR3d 9),[1] New York has fashioned a rule *489 that failure to use a seat belt shall not be introduced into evidence in regard to the issue of liability but rather as an element in mitigating damages (Vehicle and Traffic Law § 1229-c [8]; Spier v Barker, 35 NY2d 444; DiMauro v Metropolitan Suburban Bus Auth., 105 AD2d 236; Costanza v City of New York, 147 Misc 2d 94; see generally, Annotation, Nonuse of Seat Belt as Failure to Mitigate Damages, 80 ALR3d 1033). The failure to use a seat belt is an affirmative defense that must be properly pleaded and proved by the defendant (Vehicle and Traffic Law § 1229-c [8]; Baginski v New York Tel. Co., 130 AD2d 362; Costanza v City of New York, supra).
The seat belt issue was first directly presented to the Court of Appeals in 1974 in Spier v Barker (35 NY2d 444, supra). In Spier, the Court held that "nonuse of an available seat belt, and expert testimony in regard thereto, is a factor which the jury may consider, in light of all the other facts received in evidence, in arriving at its determination as to whether the plaintiff has exercised due care, not only to avoid injury to himself, but to mitigate any injury he would likely sustain” (supra, at 449-450). Judge Gabrielli presaged the overwhelming statistics that would follow concerning the reduction of the incidence of death and serious injuries by using seat belts when he wrote: "At this juncture, there can be no doubt whatsoever as to the efficiency of the automobile seat belt in preventing injuries” (supra, at 452).
New York was the first State to pass legislation directing that no motor vehicle should be sold, registered or operated in the State unless equipped with seat belts approved by and conforming to standards established by the Commissioner of the Department of Motor Vehicles (see, L 1968, ch 86; Vehicle and Traffic Law § 383). A majority of States have followed New York’s lead and have adopted mandatory seat belt laws in some form. New York continued to lead in seat belt legislation and, in 1984, it became the first State to mandate legislatively that occupants of motor vehicles utilize seat belts. In approving the 1984 bills requiring the mandatory use of seat belts (Vehicle and Traffic Law § 1229-c), Governor Cuomo, *490 in expanding upon the prior observation of Judge Gabrielli, commented as follows:
"With the approval of this legislation, which is the first seat belt law of its type in the country, New York again demonstrates to the nation its strong commitment to the safety of our travelling public.
"The evidence and statistics in favor of seat belt law are overwhelming. Each year, this law will save 300-400 lives and reduce or eliminate approximately 70,000 injuries. In addition, it will result in a savings of approximately $240 million annually in various costs imposed on society as a result of these needless tragedies.
"Scientific studies have proven that seat belt use has a direct and immediate impact on highway fatalities and injuries. Persons who wear seat belts are more likely to remain in control of their vehicle and less likely to be ejected or hurled to other parts of the vehicle. Thus, they protect themselves, passengers in their vehicle, and other motorists and pedestrians as well.” (1984 McKinney’s Session Laws of NY, at 3599.)
The policy underlying seat belt legislation and its introduction as a defense in tort litigation has thus been recognized by the judicial, legislative and executive branches of State government.
Applying the facts to the law in the claim sub judice, the court must decide initially whether the deceased utilized a seat belt. At the trial conflicting evidence was presented as to whether Mrs. Karczmit was wearing a seat belt at the time of the accident.[2] The shoulder harness on the car operated by Mrs. Karczmit was a passive restraint that required no active intervention. It could, however, be manually disengaged. The lap belt had to be manually engaged. The first individuals to reach Mrs. Karczmit following the accident were Mr. and Mrs. Goodman. Mr. Goodman testified that he observed a shoulder harness on Mrs. Karczmit. On cross-examination, Mr. Goodman indicated that he did not see whether the lap belt was engaged nor was he sure whether the shoulder harness was attached. Mrs. Goodman described the shoulder harness as "draped over” Mrs. Karczmit. Susan Rubin, a member of the local volunteer ambulance corps, was next to arrive at the scene. Ms. Rubin, one of whose children had been a student in *491 the deceased’s class, related that she intentionally looked for a seat belt since it was standard procedure when arriving at an accident to ascertain whether a seat belt had been utilized. She testified that neither the lap belt nor the shoulder harness was engaged.
Inconsistencies in the Goodmans’ testimony, coupled with their uncertainty as to what they had observed and their obvious distress following the accident, made their testimony on the seat belt issue unconvincing. Ms. Rubin, on the other hand, who appeared pursuant to a subpoena, was a particularly credible witness. She was both articulate and forthright in her testimony. Dr. James Pugh, a well-qualified expert retained by defendant relative to the seat belt issue, testified convincingly that only an unrestrained occupant would have sustained the type of injuries indicated in the autopsy report of Mrs. Karczmit, whereas a restrained occupant would have received minimal injuries. There was no proof or suggestion that either a driver’s shoulder harness or lap belt in the deceased’s vehicle was unavailable or defective. In the absence of such proof, it "should be presumed that all of the seat belts with which a vehicle has been equipped are both operable and available.” (DiMauro v Metropolitan Suburban Bus Auth., supra, at 244.) Upon weighing and considering the evidence presented at trial, including the autopsy report demonstrating the nature of the death-producing injuries sustained by Mrs. Karczmit, the court necessarily finds that Mrs. Karczmit failed to make use of either the shoulder harness or lap belt.
VII. EFFECT OF SEAT BELT DEFENSE IN WRONGFUL DEATH CLAIM
Next, the court must consider the effect, if any, on the damages award due to the failure of Mrs. Karczmit to utilize an available seat belt. In addressing the seat belt defense in the context of a wrongful death claim, the court must examine the implications of the issue presented as a predicate to a determination concerning whether the evidence at trial established that Mrs. Karczmit would have survived if she had utilized a seat belt. Lastly, the court must consider the legal effect that such factual determination will have on the award of damages.
In the typical personal injury case in New York, the accepted rule has been that the injured party cannot recover damages for personal injuries he would not have received had *492 he used an available seat belt.[3] To urge that the rule should not apply in a wrongful death action even though the death results from injuries that the deceased would not have received had he used an available seat belt requires one to resort to sophistry.
The seat belt defense, however, is particularly problematic in a claim for wrongful death. In Noth v Scheurer (285 F Supp 81, 85), Judge Bartels succinctly identified the issues as follows: "In accident cases involving the failure to wear seat-belts, there is a distinction to be made between causes of action for injuries and causes of action for wrongful death. The utilization of the seatbelt in the latter case conceivably might have prevented the extreme result of death and the cause of action arising therefrom, whereas in the former case its use would only have reduced the extent and degree of the injuries. This is a highly speculative question which if considered, would be a question for the jury, imposing a heavy burden of proof upon the defendant”. Seemingly, a negligent defendant can thus defeat a wrongful death claim by establishing to the satisfaction of the fact finder through expert testimony that the deceased would have survived if a seat belt had been utilized, even if injuries would nevertheless have befallen the deceased. Such a draconian result is reminiscent of contributory negligence, which has long been replaced in New York by comparative negligence (see, CPLR art 14-A). There is, however, authority ostensibly indicating that if the fact finder determines that damages would have flowed from nonfatal injuries that would have occurred had a seat belt been utilized, the award may be diminished rather than eliminated (see, Cappadona v State of New York, 154 AD2d 498; Uribe v Armstrong Rubber & Tire Co., 55 AD2d 869). In *493 reality, the two cases appear to be an attempt to modify the harshness of a strict application of the Spier rule.
The potential difficulties attendant to the seat belt defense often do not materialize at trial. Factors contributing to dissipation of the defense include the difficult and frequently speculative nature of the proof, together with the heavy burden cast upon the defendant (see, Baginski v New York Tel. Co., 130 AD2d 362, supra; Noth v Scheurer, 285 F Supp 81, supra), or the failure of the defendant to produce any expert witness as to the injuries that would have been avoided if an available seat belt had been used (see, Siegfried v Siegfried, 123 AD2d 621). Indeed, the court was surprised by the paucity of New York cases dealing directly with the seat belt defense in wrongful death claims. The present claim, however, implicates directly the troublesome seat belt issue in a wrongful death claim.
Accordingly, the court must make a factual determination as to whether Mrs. Karczmit would have survived had she utilized the available seat belt and, if so, the legal effect on the damages award of such a determination. Initially, the court notes that all three experts, Mr. Champagne, Mr. Pucino and Dr. Pugh, were in virtual agreement as to the speed the car was traveling when it impacted the tree or utility pole.[4] The horizontal speed was approximately 23 to 27 miles per hour, with an impact speed of 15 to 17 miles per hour. The difference between the horizontal speed and impact speed was explained as being due to the fact that some energy was absorbed by the car rotating at impact and spinning off at approximately 10 miles per hour. Dr. Pugh testified that crash tests with the model of car driven by Mrs. Karczmit revealed that the seat belts provided adequate protection to avoid contact with interior structures. He opined that if Mrs. Karczmit had been wearing the seat belt she would not have received the injuries that caused her demise. Indeed, Dr. Pugh convincingly stated that Mrs. Karczmit would have received minimal injuries, such as bruises and sprains, if she had been wearing a seat belt. The court found Dr. Pugh to be an exceptionally qualified and credible witness. The court accepts his testimony and finds that, at an impact speed of 15 to 17 miles per hour, Mrs. Karczmit not only would have survived if *494 she had utilized a seat belt but also would have sustained, at most, minor injuries rather than the catastrophic injuries, including a complete transection of the medulla, resulting in her death.
Since the credible evidence leads inexorably to the conclusion that death would not have resulted if the deceased had utilized an available seat belt, the key question that must be resolved is whether the seat belt defense negates any recovery in this wrongful death claim. An issue that must be considered in this regard is whether CPLR article 14-A (L 1975, ch 69) effected a change in the law as regards the seat belt defense following the 1974 decision of the Court of Appeals in the Spier case (35 NY2d 444, supra) so that an award of damages is possible in light of the State’s negligence that was a proximate cause of the subject accident and the death of Mrs. Karczmit (see, Fernandez v Vukosa, 108 Misc 2d 48; but see, Costanza v City of New York, 147 Misc 2d 94, supra).
Prefatorily, it should be noted that in Spier (supra), the Court concluded that three basic approaches had been advanced by defendants in support of the seat belt defense, namely: (1) that plaintiff’s nonuse of a seat belt constitutes negligence per se; (2) that nonuse of a seat belt may demonstrate that the plaintiff had not complied with the standard of conduct which would have been pursued by a reasonable man under the circumstances, and therefore the plaintiff could be found to have been contributorily negligent; and (3) that the plaintiff, under the circumstances of the particular case, could be found to have acted unreasonably and in disregard of his own best interest and thus should not be permitted to recover for those injuries that a seat belt would have obviated. The Court rejected the first two approaches and accepted the third, the doctrine of avoidable consequences. Importantly, it must be observed that under the law as it then existed the third approach was beneficial to the plaintiff since acceptance of either of the first two approaches would have precluded recovery. Indeed, as Judge Gabrielli observed: "[HJolding a nonuser contributorily negligent would be improper since it would impose liability upon the plaintiff for all his injuries though use of a seat belt might have prevented none or only a portion of them” (Spier v Barker, 35 NY2d 444, 451, supra).
However, as has been previously observed, the contributory negligence rule that barred recovery by a negligent plaintiff was abolished with the adoption of CPLR article 14-A in 1975 (see, Barker v Kallash, 63 NY2d 19, 28). CPLR 1411 provides:
*495 "In any action to recover damages for personal injury, injury to property, or wrongful death, the culpable conduct attributable to the claimant or the the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages” (emphasis supplied).
One commentator has cogently suggested that the language used by the Legislature in describing the apportionment of fault is particularly important since CPLR 1411 mandates a comparison between the culpable conduct attributable to the claimant or decedent against the totality of all culpable conduct which caused the damages (see, Schwarz, The New York Seat Belt Defense, 59 NY St B J 30, 31-35 [May 1987]). The argument follows that the Legislature, in the enactment of CPLR article 14-A, implicitly overruled Spier (supra) by failing to adopt Spier’s dichotomy between culpable conduct that caused the accident and culpable conduct that caused certain injuries so as to permit the grouping of all culpable conduct together for consideration by the fact finder (see, id.; cf., Fernandez v Vukosa, 108 Misc 2d 48, supra).
The troublesome nature of a strict application of the Spier rule was expressed in a footnote in DiMauro v Metropolitan Suburban Bus Auth. (105 AD2d 236, 247, n 4, supra), when the Second Department, without commenting upon CPLR article 14-A, observed: "[W]e express some reluctance in following the mechanical rule set forth in Spier v Barker (35 NY2d 444), which effectively imposes 100% liability upon an unbelted plaintiff for injuries sustained as a result of his or her failure to wear a seat belt, notwithstanding the fact that he or she may have been blameless in causing the accident in the first instance. Thus, in the case, e.g., of an unbelted passenger who is sitting in a vehicle which is lawfully stopped at a traffic signal, it is theoretically possible to recover nothing even though the vehicle was struck in the rear by a speeding, intoxicated driver. Juries, of course, have shown a certain disinclination to strictly apply the Spier rule (see, e.g., Curry v Moser, 89 AD2d 1), apparently sensing the injustice which can result from the failure to apportion liability for the injuries caused by the so-called 'second collision’ amongst its contributors, e.g., the unbelted passenger and the various operators of the vehicles involved. However, the presence of Spier as a controlling precedent precludes us from adopting *496 any such rule in this case. Whether the situation will change with the recent enactment of the mandatory seat belt law (Vehicle and Traffic Law, § 1229-c, subd 3, as added by L 1984, ch 365, eff Dec. 1,1984) is not presently before us.”
In McMahon v Butler (73 AD2d 197), which involved Vehicle and Traffic Law § 383 and contribution under CPLR article 14, the Third Department was required to decide whether a cross claim for contribution should lie against the owner of an automobile who had failed to equip his automobile with a seat belt. The court concluded that although such failure did not cause the accident but may have contributed to the plaintiff’s injury, a jury should be permitted to determine whether the violation was the proximate cause of plaintiff’s injury so as to render the owner liable and subject to contribution. The effect of the decision in McMahon was to permit a jury (1) to compare the culpability of an individual who did not cause the accident, but whose culpability contributed to the plaintiff’s injuries, with the culpability of one whose negligence caused the accident, and (2) to apportion liability. The same result should have occurred as regards the failure to wear a seat belt when article 14-A was enacted if Spier (supra) were not to be applied.
Not all courts have applied Spier (supra) mechanically. In Curry v Moser (89 AD2d 1, supra), plaintiff was riding as a front seat passenger in defendant’s car without having fastened a seat belt. As defendant was negotiating a left-hand turn, the passenger door of her automobile opened, and plaintiff was injured when she fell from the automobile into the path of a following vehicle. Although the jury found that 100% of plaintiff’s injuries resulted from her failure to wear an available seat belt, the jury reduced its damage award by only 30%. In light of the jury’s inconsistent resolution of the damages issue the Second Department reversed and ordered a new trial with respect to both liability and damages issues. It concluded that under the "unique facts of the case” the jury should be entitled to consider plaintiff’s failure to wear a seat belt in apportioning damages. The Court cautioned that should the jury find some culpable conduct on the part of the plaintiff as regards the accident, such conduct should not be considered again under the Spier rule because a double reduction of plaintiff’s damages would be inappropriate. Thus, under Curry, plaintiff’s falling out of a vehicle before she was struck by a following vehicle afforded her an opportunity to *497 recover for injuries that the jury had already determined she would not have sustained if she had worn her seat belt.
The inherent problem in not treating the seat belt defense as culpable conduct under article 14-A is evident when the seat belt defense is raised in a products liability "crashworthiness” case. In the typical case involving a motor vehicle accident, the plaintiff urges that the manufacturer, although not causing an accident, has created a latent defect in a motor vehicle such as a dashboard that is too rigid, and the defect has aggravated injuries sustained by an occupant of a vehicle involved in a collision. In such event, although aggravation of injuries sustained in the accident is involved, as in the situation of failure of an individual to wear an available seat belt, the crashworthy issue is presented to the fact finder together with all other culpable conduct issues on the question of apportionment of fault. In a bifurcated case the seat belt issue would not arise on the liability phase of the case. A scenario could arise in which the manufacturer, although its culpable conduct did not cause the accident, could be held responsible with another defendant on the liability phase of the case for aggravation of plaintiff’s injuries but yet be absolved from paying damages on the damages aspect of the trial if it is determined the plaintiff would not have suffered the injuries had he been wearing an available seat belt (see, Schwarz, The New York Seat Belt Defense, op. cit).
Article 14-A was enacted upon the recommendation of the Judicial Conference (see, 13th Ann Report of Jud Conf on CPLR, at 14-38, reprinted in 21st Ann Report of NY Jud Conf, at 238-247; 2A Weinstein-Korn-Miller, NY Civ Prac |[ 1411.01).[5] Article 14-A changed the New York system involving certain tortious actions from one in which contributory negligence barred recovery to one of pure comparative fault. Article 14-A is applicable to any action to recover damages for personal injury, property damage or wrongful death regardless of the form of the action upon which recovery is sought. In referring to CPLR 1401, 1402 and 1411 the Court of Appeals has observed: "The history of these statutes shows that by referring to 'culpable’ conduct, rather than negligence, the Legislature intended to include tortious conduct generally, breaches of warranty and the like which had previously *498 served to defeat otherwise cognizable causes of action for damages, or bar contribution among defendants” (Barker v Kallash, 63 NY2d 19, 28, supra). The phrase "culpable conduct” includes not only negligence but whatever conduct of the plaintiff that the law deems blameworthy (Arbegast v Board of Educ., 65 NY2d 161; McCabe v Easter, 128 AD2d 257).
If CPLR 1411 had been in effect prior to the decision in Spier v Barker (supra), one can conclude that it would have been unnecessary for the Court of Appeals, which throughout the history of American jurisprudence had been in the forefront of the continuing development of the common law, to fashion the rule that permitted a plaintiff to recover certain damages despite his or her failing to wear an available seat belt, especially when one considers pronouncements of the Court of Appeals in post-Spier cases involving article 14-A (see, e.g., Arbegast v Board of Educ., supra; Barker v Kallash, supra). With the enactment of CPLR article 14-A, juries and courts were provided with the means to perform substantial justice to both plaintiffs and defendants in motor vehicle accident cases (see generally, Note, A Compromise Between Mitigation and Comparative Fault?: A Critical Assessment of the Seat Belt Controversy and a Proposal for Reform, 14 Hofstra L Rev 319 [1986]).
Recognizing that the Court of Appeals observed in Arbegast v Board of Educ. (supra, at 169), that the "Legislature is, however, presumed to be aware of the decisional and statute law in existence at the time of an enactment * * * and to have abrogated the common law only to the extent that the clear import of the language used in the statute requires”, this court, in light of the legislative history of CPLR article 14-A and companion statutes, concludes that the Legislature implicitly abrogated the rule of Spier (supra) by enacting CPLR article 14-A (cf, Fernandez v Vukosa, 108 Misc 2d 48, supra). Since the term "culpable conduct” includes "conduct which, for whatever reason, the law deems blameworthy” (Arbegast v Board of Educ., supra, at 168), it cannot be argued cogently that the failure to wear a seat belt should not have been considered culpable conduct within the meaning of CPLR article 14-A upon its enactment in 1975.
For illustrative purposes, when an intoxicated or speeding driver crosses the center line of a highway and strikes head-on an automobile proceeding in an opposite direction, the driver’s culpable conduct, traditionally referred to as negligence in *499 such an instance, is necessarily both a cause-in-fact and a proximate cause of the accident and of any injuries to or death of an occupant of the other automobile, whether or not such occupant was wearing an available seat belt. Following the enactment of CPLR article 14-A by the Legislature, and the statute’s approval by the Governor, an apportionment of damages could have proceeded in a wrongful death case in which a deceased had failed to wear an available seat belt in the same manner as in the "crashworthiness” cases.
If this court’s conclusion concerning the applicability of article 14-A to cases involving a plaintiff’s failure to use an available seat belt is correct, the question necessarily arises as to the subsequent effect of Vehicle and Traffic Law § 1229-c (L 1984, ch 365). Subdivision (8) of Vehicle and Traffic Law § 1229-c provides: "Non-compliance with the provisions of this section shall not be admissible as evidence in any civil action in a court of law in regard to the issue of liability but may be introduced into evidence in mitigation of damages provided the party introducing said evidence has pleaded such noncompliance as an affirmative defense.” The statute was not enacted for the purpose of codifying the rule of Spier v Barker (35 NY2d 444, supra), but was in response to Federal Motor Vehicle Safety Standard No. 208 (49 CFR 571.208 [1985]) promulgated by the National Highway Traffic Safety Administration (NHTSA). Under section 4.1.5.2 (a) (2) of the Federal standard, a statute of a State choosing to comply with the standard must contain, inter alia: "A provision specifying that the violation of the belt usage requirement may be used to mitigate damages with respect to any person who is involved in a passenger car accident while violating the belt usage requirement and who seeks in any subsequent litigation to recover damages for injuries from the accident.”
Clearly, the Federal standard does not require the application of the Spier rule relative to the mitigation approach to the seat belt defense but permits the comparative fault approach or any other approach that acts to reduce an injured party’s recovery in the event of a failure to use an available seat belt. In response to NHTSA’s standard, certain States rejected the mitigation requirement. Although Vehicle and Traffic Law § 1229-c (8) seems to be a statutory reintroduction and adoption of the Spier mitigation approach, it need not be construed to constitute a legislative intention to abrogate the comparative fault approach in all respects as regards the seat belt defense.
*500 Importantly, the statute mandates that the failure to wear a seat belt "shall not be admissible as evidence in any civil action * * * in regard to the issue of liability but may be introduced into evidence in mitigation of damages” (Vehicle and Traffic Law § 1229-c [8] [emphasis supplied]). The statute thus evinces a legislative judgment that the failure to use a seat belt should have no bearing on the liability aspect of a civil action, the same judgment pronounced by the Court of Appeals in Spier (supra). The failure to wear a seat belt falls within the post Spier culpable language of article 14-A that the "culpable conduct attributable to the claimant or to the decedent * * * shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages” (CPLR 1411 [emphasis supplied]). The failure of an occupant to wear a seat belt while riding in an automobile is indeed culpable conduct and can often be culpable conduct that is a cause of personal injury or death. Under Vehicle and Traffic Law § 1229-c (8), it simply cannot be considered on the liability portion of the trial. At the same time a defendant, whose culpable conduct caused the first collision and contributed to the second collision, should not be absolved completely from liability for second collision damages because the injured party failed to wear an available seat belt. When considered in such light, CPLR 1411 and Vehicle and Traffic Law § 1229-c (8) can be read in harmony without resorting to legal gymnastics.
In the absence of a defined rule by the Court of Appeals or another appellate court, it becomes necessary for this court in the present matter to reach a damages award consistent with the two subject statutes and the factual circumstances surrounding the accident and death of Mrs. Karczmit.[6] Absent the combined negligence of defendant and the deceased, a fair resolution would be to apportion the damages on a 50-50 basis. Thus, if defendant had been totally liable for the happening of the accident, it could be fairly found that its culpable conduct, being a proximate cause of the first collision and the second *501 collision injuries resulting in the death of Mrs. Karczmit should result in its being responsible for 50% of the total damages. The second collision injuries and death resulting from Mrs. Karczmit’s culpable conduct, not as regards liability but in failing to wear an available seat belt to mitigate damages, should be assessed at 50% of the damages award.
Since the court has previously found the culpable conduct of the defendant and the deceased in causing the accident to be equal, defendant’s proportional share of damages, after mitigation for failure to utilize an available seat belt (see, sections VI and VII, supra), is 25%. Claimant is thus awarded $1,605.06 in special damages for funeral expenses, $10,081.75 in past economic damages and $109,024.25 in future economic damages, together with interest from January 5, 1990, the date of death of the deceased, to October 26, 1990, six months after issuance of letters of testamentary to the claimant, and from February 11, 1991, the date of filing of the claim, to the date of decision and thereafter to the date of entry of judgment.[7]

. As the law evolved in other States concerning the use of seat belts in motor vehicles, many of the highest courts of such States declined to permit the introduction of evidence concerning the nonuse of a seat belt by a plaintiff or a deceased when offered to prove fault or the failure to mitigate damages in motor vehicle accident cases (see, e.g., Britton v Doehring, 286 Ala 498, 242 So 2d 666; Fischer v Moore, 183 Colo 392, 517 P2d 458; Hansen v Howard O. Miller, Inc., 93 Idaho 314, 460 P2d 739; Clarkson v Wright, 108 Ill 2d 129, 483 NE2d 268; Hampton v State Highway Commn., 209 Kan 565, 498 P2d 236; Cierpisz v Singleton, 247 Md 215, 230 A2d 629; Kopischke v First Continental Corp., 187 Mont 471, 610 P2d 668; Selgado v Commercial Warehouse Co., 88 NM 579, 544 P2d 719; Miller v Miller, 273 NC 228, 160 SE2d 65; Amend v Bell, 89 Wash 2d 124, 570 P2d 138). By legislative action *489 some States excluded the seat belt defense in personal injury cases, while the Legislatures of certain other States passed statutes permitting the admission of seat belt evidence but substantially limiting the percentage of fault that the fact finder can attribute to the nonuse of a seat belt (see generally, Waterson v General Motors Corp., 111 NJ 238, 544 A2d 357 [containing a comprehensive discussion of the seat belt defense throughout the United States]).

. Seat (lap) safety belts and shoulder harness safety belts are required in all 1974 and newer vehicles offered for sale in New York (15 NYCRR part 49).

. In an action triable before a jury, when an available seat belt has not been used and expert testimony has been adduced from which the jury could find that some or all of plaintiffs injuries would not have occurred if a seat belt had been used, the following charge is ordinarily given: "Defendant contends that plaintiff could have avoided some or all of the injuries he claims to have received had he used the seat belt with which the car was equipped and may not recover for such injuries. If you find that a reasonably prudent passenger [or driver] would under the circumstances have used the seat belt and that had plaintiff used the seat belt he would not have received some or all of the injuries for which he claims, you may not make any award for those injuries you find he would not have received had he used the seat belt. The burden of proof that some or all of the injuries would not have been received had plaintiff used the seat belt is upon the defendant” (1 NY PJI2d 2:325, at 695).

. Although there was conflicting evidence as to whether the primary impact was with the tree or the utility pole, resolving such factual dispute is not necessary in deciding the issues relevant to the claim.

. A 1974 bill replacing the doctrine of contributory negligence with a version of comparative negligence so long as plaintiff’s negligence was less than that of the defendant was vetoed by Governor Wilson.

. A partial solution to the problem would be for the Legislature to place a ceiling on the percentage that an award can be diminished as a result of the failure to wear an available seat belt. Such an approach has been adopted in several jurisdictions (see, Iowa Code § 321.445 [4]; Mich Stat Annot § 257.710e [6]; Mo Stat Annot § 307.178 [3]; Neb Rev Stat §39-6,103.08).

. No timely notice of intention to file a claim or a claim was filed as regards either personal injuries or conscious pain and suffering sustained by the deceased, and, in any event, the death of Mrs. Karczmit as a result of the accident was instantaneous.