Alma **DIEHL, as executrix of the goods, chattels and credits of William Diehl, deceased, and Alma Diehl, individually, Plaintiff,**

v.

**Frank OGOREWAC, Defendant.**

**No. 92–CV–1886 (TCP).**

United States District Court, E.D. New York.

Oct. 20, 1993.

Edward A. Fleck, Fleck, Fleck & Fleck, Garden City, NY, for plaintiff Alma Diehl Individually and as Executrix of William Diehl.

N. Nicholas Goodman, Quirk and Bakalor, P.C., New York City, for defendant Frank Ogorewac.

### MEMORANDUM AND ORDER

PLATT, Chief Judge.

Plaintiff Alma Diehl moves pursuant to Federal Rule of Civil Procedure 12(f) to strike defendant's first affirmative defense asserting plaintiff William Diehl's failure to wear an available seat belt caused or contributed to his injuries and ultimate death. Defendant cross-moves to amend the answer to include a second affirmative defense as to

plaintiff Alma Diehl for failure to wear her seat belt. Plaintiff asserts that both defenses are not available as a matter of law in automobile accident cases under North Carolina law. Defendant counters that either New York or New Jersey law should be applied to this dispute and that the defense is available to mitigate damages under the substantive law of either State. Because this Court finds that New York law controls this dispute, the plaintiff's motion to strike the affirmative defense must be denied and the defendant's motion to amend the answer is granted.

## Background

Plaintiff Alma Diehl and decedent William Diehl set out from their Long Island, New York home on October 12, 1989 bound for Orlando, Florida. The couple picked up defendant Frank Ogorewac and his wife Lina, Alma Diehl's sister, at their Lakewood, New Jersey home and headed south on Interstate 95 in a 1989 Plymouth Voyager van purchased, registered, and insured in New York State by decedent William Diehl. In the early morning hours of October 13, 1989, the party stopped at a Virginia gas station just north of the North Carolina border at which point defendant Ogorewac assumed control of the vehicle. The group continued their journey down Interstate 95 with Defendant Ogorewac driving, William Diehl in the passenger seat, and Alma Diehl and Lina Ogorewac in the rear seat.

Shortly after entering North Carolina, a deer crossed the path of the vehicle. Defendant Ogorewac swerved to avoid the animal, causing the vehicle to veer off the road and overturn on the median. Ogorewac and his wife suffered minor injuries. Alma Diehl sustained broken ribs, a fractured scapula and other minor injuries. William Diehl was ejected from the vehicle during roll-over, causing severe injuries and massive head trauma. Mr. Diehl was pronounced dead at the scene at approximately 4:45 a.m.

Plaintiff Alma Diehl filed suit in this Court on behalf of herself individually and as executrix of her husband's estate based upon this Court's diversity jurisdiction. Defendant answered with an affirmative defense to liability for some or all of the injuries to William

Diehl due to his failure to wear a seat belt. Ogorewac now seeks to add a second affirmative defense based upon Alma Diehl's failure to wear a safety belt. Plaintiff opposes defendant's efforts to amend the answer and seeks to strike the first affirmative defense as being improper under North Carolina law. *See* N.C.Gen.Stat. § 20–135.2A(d) (Michie 1990) (evidence of failure to wear seat belt inadmissible in negligence suit).

## Discussion

The present cross-motions require this Court to determine which state substantive law will provide the rules of decision in this dispute. A choice of law issue arises when the allegedly illicit conduct or the parties themselves have sufficient contacts with two or more states having contradictory laws such that several states could constitutionally apply their laws to the dispute. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 70–71, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993). When such a conflict arises, a federal court sitting in diversity must ascertain the appropriate law by applying the conflicts of law principles of the forum state. *See Klaxon v. Stentor,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Reeves v. American Broadcasting Co., Inc.,* 719 F.2d 602, 605 (2d Cir.1983). The parties are in substantial agreement that the seat belt defense is available under the laws of New York and New Jersey but not in North Carolina. *Compare Spier v. Barker,* 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974) *and Waterson v. General Motors Corp.,* 111 N.J. 238, 544 A.2d 357 (1988) *with Miller v. Miller,* 273 N.C. 228, 160 S.E.2d 65 (1968). Our analysis of this choice of law issue under New York law is guided by the basic principles set forth by the decisional law of the New York Court of Appeals. Under New York choice of law rules, the substantive law of New York must control in this action.

## I. Constitutional Constraints On Choice of Law

This Court may constitutionally apply the substantive law of North Carolina, New Jersey or New York to this dispute. A

court may apply the law of any state wherein the defendant is subject to *in personam* jurisdiction provided that state has a sufficient interest in the dispute such that application of its law does not offend the Due Process Clause or the Full Faith and Credit Clause of the United States Constitution. *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 320 & n. 3, 101 S.Ct. 633, 644 n. 3, 66 L.Ed.2d 521 (1981) (Stevens, J., concurring). All three states may properly exert personal jurisdiction over defendant Ogorewac.[1] Moreover, a particular state's law may be applied to a dispute consistent with the Due Process Clause and the Full Faith and Credit Clause where that state has "significant contacts or a significant aggregation of contacts creating state's interest such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate,* 449 U.S. at 313, 101 S.Ct. at 640. These "modest restrictions" are easily met where a significant portion of the acts or omissions took place within or by a domiciliary of a state. *Shutts,* 472 U.S. at 818–19, 105 S.Ct. at 2977–78. Since Ogorewac is a domiciliary of New Jersey and both New York and North Carolina have ample contacts with the persons and events of this controversy, this Court may constitutionally choose any of the three states' substantive law.

## II. New York Choice of Law Rules

■ Conflicts of law in tort issues under New York law are resolved under the governmental interests doctrine the Court of Appeals formally adopted in *Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972). Under this doctrine, the state having the greatest interest in fostering its domestic policies with respect to the conflict will supply the governing law. *Cooney v. Osgood Machinery, Inc.,* 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993). New York courts have consistently held that conduct regulating rules of the jurisdiction where the tortious act occurred must be applied because that state has the "predominant, if not exclusive, concern" with the dis-

position of that issue. *Babcock v. Jackson,* 12 N.Y.2d 473, 483, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). However, where the conflict involves the allocation of losses between the parties, the rules are necessarily less precise. In *Neumeier,* the Court enunciated several general rules of presumptive applicability in choice of law cases involving risk-shifting provisions. Applying these basic principals to the current dispute reveals that New York is the proper choice of law.

### A. *Conduct Regulating Rules*

■ There is no conflict between the states as to the conduct-regulating aspect of the seat belt law. Plaintiff argues that North Carolina law must control because legislation concerning the use or non-use of a seat belt regulates conduct and thus the *lex loci delicti* rule of *Babcock* prevails. However, to the extent the seat belt issue involves the regulation of conduct, there is no conflict because New York, New Jersey and North Carolina all require front seat passengers to wear an available seat belt. *See* N.C.Gen. Stat. § 20–135.2A (1992); N.J.Rev.Stat. 39:3–76.2e–k (1990); N.Y.Veh. & Traf. Law § 1229–c (McKinney 1986). North Carolina's prohibition on admitting evidence of a plaintiff's failure to wear a seat belt does not regulate conduct since it does not purport to limit the scope of permissible conduct in North Carolina. In the absence of a conflict in the laws of the states having personal jurisdiction over the action, this Court applies the law of the forum. *See Walton v. Arabian American Oil,* 233 F.2d 541, 543–44 (2d Cir.1956). Accordingly, insofar as the seat belt laws regulate conduct, no conflict exists and we must apply New York law.

### B. *Loss Allocation Rules*

■ The availability of a complete or partial defense to liability based upon the victim's use of a seat belt is a loss allocation rule that requires an analysis of the countervailing interests of each state in enforcing its rule. In this regard, "the significant contacts

---

**1.** Ogorewac apparently consented to New York jurisdiction and is subject to general personal jurisdiction in New Jersey, his state of domicile. Also, North Carolina provides long arm jurisdic-

tion over any foreigner who commits a tortious act within the state. N.C. Gen.Stat. § 1–75.4(2) (1992).

are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz v. Boy Scouts of America, Inc.,* 65 N.Y.2d 189, 197, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985). In *Neumeier,* the Court enunciated three rules of presumptive applicability in conflicts relating to loss allocating laws, two of which bear upon our resolution of the present conflict. Simply stated, the first *Neumeier* rule provides that where the plaintiff and defendant share a common domicile, that law should control irrespective of the locus of the tort. *Neumeier,* 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454 ["*Neumeier* One"]. However, where the parties are domiciled in different states, neither of which is the jurisdiction wherein the tort occurred, the third *Neumeier* rule provides that the law of the place of injury should normally control "but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants." *Id.* ["*Neumeier* Three"]. Applying these two rules to the present dispute, considerate of the policies to be advanced by each rule, reveals that New York is the proper choice of law.

The rationale underlying the first *Neumeier* rule counsels in favor of application of New York law. Although *Neumeier* One is facially inapplicable to the present dispute since the parties reside in different states, this Court finds their diversity to be of no moment where the substantive law of each domicile is harmonious. *Neumeier* recognized that the mutual decision to accept the benefits and burdens of one state's laws overcame any interest the locus jurisdiction had in dictating the allocation of risks between codomiciliaries. *Schultz,* 65 N.Y.2d at 198, 491 N.Y.S.2d 90, 480 N.E.2d 679. Equally important, however, was the fact that neither party could complain of upset expectations when the law of their common domicile was applied to the dispute. *See Cooney,* 81 N.Y.2d at 77, 595 N.Y.S.2d 919, 612 N.E.2d 277; *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 327, 101 S.Ct. 633, 647, 66 L.Ed.2d 521 (1981) (Stevens, J., concurring). Similarly, since parties to the present dispute have voluntarily aligned themselves with states that share

a common perspective on this issue of law, neither can complain that this Court subjects them to the standard of care commensurate with the law of their respective domicile. Therefore, this Court finds that application of New York law in the present instance fully comports with the policies served by the first *Neumeier* rule.

■ A balancing of the respective state interests under the third *Neumeier* rule mandates displacement of North Carolina law in favor of New York law. *Neumeier* Three defaults to the *lex loci delicti* doctrine based upon the presupposition that "the interests of each State in enforcement of its law is roughly equal." *Cooney,* 81 N.Y.2d at 74, 595 N.Y.S.2d 919, 612 N.E.2d 277. However, this premise fails when the states have disproportionate interests in the resolution of the issue. *Schultz,* 65 N.Y.2d at 201–02, 491 N.Y.S.2d 90, 480 N.E.2d 679. In such a case, this Court should apply the law of state having the greatest policy interests at stake unless doing so will impair the smooth working of the multi-state system or produce great uncertainty for litigants. *Neumeier,* 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454.

New York has a clearly superior interest in the allocation of losses between the parties to the present dispute. Since neither party resides in North Carolina, that state will be neither benefitted nor burdened by the outcome of this case. New York, on the other hand, has a direct stake in the resolution of this issue because it directly impacts the recovery of a New York plaintiff. *See Neumeier,* 31 N.Y.2d at 125, 335 N.Y.S.2d 64, 286 N.E.2d 454 (distinguishing past cases because they did not impact New York plaintiff). Furthermore, application of New York conflict of law rules requires "a recognition that the insurer, rather than the individually named defendant, is often the real party in interest." *Schultz,* 65 N.Y.2d at 197, 491 N.Y.S.2d 90, 480 N.E.2d 679. Plaintiff William Diehl's car was registered and insured to Diehl in New York. Consequently, Ogorewac is merely a nominal defendant and the real parties in interest to the present litigation are the Diehls and their New York insurance company, at least to the extent of

the policy's coverage.[2]  No state may claim an interest superior to New York in regulating the amount of recovery a New York plaintiff may receive from a New York insurer.  Hence, New York has the greatest interest in applying its laws to these facts.

■  Application of New York law to this dispute also fully comports with the reasonable expectations of the parties and will advance the interests of New York without impairing the "smooth working of the multistate system." *Neumeier*, 31 N.Y.2d at 128, 335 N.Y.S.2d 64, 286 N.E.2d 454.  Holding the parties to a standard of care consistent with the law of their domicile fosters certainty and predictability in the law by ensuring that citizens are not subject to vacillating standards of care as they travel across jurisdictions with which they have "isolated and infrequent contacts." *Schultz*, 65 N.Y.2d at 201–202, 491 N.Y.S.2d 90, 480 N.E.2d 679.  Moreover, the multi-state system will be best served by applying the law of the forum when it is substantially identical to the domiciles of both plaintiffs and defendants.  This element of the *Neumeier* test is chiefly concerned with forum shopping and local bias in favor of the domestic party.  *See Schultz*, 65 N.Y.2d at 201, 491 N.Y.S.2d 90, 480 N.E.2d 679.  Forum shopping is simply not at issue where, as here, the plaintiff has chosen a forum with disadvantageous law.  Further, since the laws of New York and New Jersey are the same, application of New York law evidences no bias in favor of any litigant.  Therefore, under the third *Neumeier* rule, this Court must apply New York law.

## III.  Scope of New York's Seat Belt Defense

■  Defendant also seeks leave to amend his answer under Federal Rule of Civil Procedure 15 to add a second affirmative defense alleging that plaintiff Alma Diehl failed to wear her seat belt.  Plaintiff opposes this amendment by arguing that New York law does not permit such a defense to be asserted against rear seat passengers.  This con-

tention is without merit and leave to amend is granted.

■  New York courts permit defendants in automobile accident cases to introduce evidence of plaintiff's failure to wear an available safety belt in mitigation of any damage award.  *Spier v. Barker*, 35 N.Y.2d 444, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974).  In *Spier*, the Court found that "[n]onuse of an available seatbelt, and expert testimony in regard thereto, is a factor which the jury may consider ... in arriving at its determination as to whether the plaintiff has exercised due care." *Id.* at 449, 363 N.Y.S.2d 916, 323 N.E.2d 164.  On January 1, 1985, the New York Legislature enacted a statutory provision mandating that all front seat passengers wear their safety belt at all times or risk a minor civil fine.  *See* N.Y. Veh. & Traf. Law § 1229–c (McKinney 1986).  This provision specifically provided that "[n]oncompliance with the provisions of this section shall not be admissible as evidence in any civil action in a court of law in regard to the issue of liability *but* may be introduced in mitigation of damages...." *Id.* at § 1229–c(8) (emphasis added).

■  Plaintiff argues that this statute now defines the scope of the duty owed by plaintiff and, since the statute is plainly inapplicable to rear seat passengers, no evidence Alma Diehl's failure to wear a rear seat belt may be admitted.  However, the statutory duty of front seat passengers to wear seat belts is not inconsistent with any pre-existing common law duty of rear seat passenger to wear a safety belt.  The question is one of reasonable care under the circumstances and does not turn upon the position of the plaintiff in the vehicle or the existence of a statutory mandate.  *See Smith v. Goodyear Tire & Rubber Co.*, 600 F.Supp. 1561, 1564 (D.Vt. 1985).  Since the New York Court of Appeals has found that a jury may properly consider a plaintiff's failure to use an available restraining device in awarding damages, the passage of a complimentary statute cannot be read to overrule pre-existing caselaw by silence.  *See Palmer v. Massachusetts*, 308

---

**2.**  Ogorewac is being defended in this action pursuant to an insurance policy written in New York to decedent William Diehl covering the vehicle involved in the accident giving rise to this lawsuit.  Def.Aff., at ¶ 12.

U.S. 79, 85, 60 S.Ct. 34, 37, 84 L.Ed. 93 (1939) (existing precedent may be overruled by statute only with unambiguous language). Whether being a back seat rather than a front seat passenger bears any relevance to this inquiry and the damages, if any, that Alma Diehl shall receive is a question for the jury and not this Court to decide. Therefore, defendant's request for leave to amend his answer is granted.

SO ORDERED.