■ DENISE CAPPADONA, Individually and as Administratrix of the Estate of SALVATORE A. CAPPADONA, Deceased, Respondent, v STATE OF NEW YORK, Appellant. (Claim No. 64989.)— In a claim to recover damages for wrongful death, the State of New York appeals from a judgment of the Court of Claims (Blinder, J.), dated May 6, 1987, which, upon a verdict after a nonjury trial, holding that the decedent was 50% at fault in the happening of the accident, and that the claimant's total damages amounted to $709,048.80, is in favor of the claimant and against it in the principal sum of $354,524.40.

Ordered that the judgment is modified, on the facts, by reducing the award to the claimant from the principal sum of

$354,524.40 to the principal sum of $150,000, representing 50% of $300,000, plus interest from April 17, 1987; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Court of Claims for the entry of an appropriate amended judgment.

The decedent, the husband of the claimant, was killed in an accident on the evening of December 18, 1979, while he was operating his car on one of the defendant's highways. There were no witnesses to the accident. The Court of Claims gave credence to the reconstruction of the accident by the claimant's expert, who expressed the opinion that the decedent, while driving at night in the right lane of Route 9A, unintentionally drifted into the deceleration lane for the exit ramp to Route 100. The expert opined that when the decedent attempted to regain the traveled portion of the highway, his vehicle struck a guide rail which was improperly placed on the perimeter of the paved "gore" area separating the exit ramp from the highway. This impact sent the decedent's vehicle rolling down a ravine situated behind the guide rail. In the process he was ejected from the vehicle and, landing in a creek, he drowned. An autopsy revealed that the decedent's blood alcohol level was .14%.

The State acknowledges that the absence of pavement markings delineating the border to this deceleration lane was an improper departure from its own standards for which some liability should attach. Contributing to the hazardous condition thus created was the fact that the unmarked deceleration lane emerged suddenly on the right side of the driving lane as the highway (which was not illuminated) curved to the right. Moreover, when a median barrier had been installed in 1973, the traveled portion of the roadway was made to encroach four feet into the deceleration lane, making it more likely that a motorist traveling southbound and negotiating the curve to the right would inadvertently drift into that lane. The fact that this interchange was not visible to motorists until they reached the crest of an overpass that immediately preceded it further exacerbated the hazard. Finally, the guide rail on the perimeter of the "gore" area posed a hazard to motorists who, drawn into the deceleration lane by the configuration of the highway, attempted to regain the traveled portion of the road.

Under these circumstances, the court's finding of liability was supported by the evidence and should not be disturbed. The fact that the decedent was intoxicated does not exonerate the State from liability for having created a hazardous condition and, under the circumstances of this case, the court's

apportionment of fault of 50% to each party was correct (see, Humphrey v State of New York, 90 AD2d 901, affd 60 NY2d 742; Pellegrino v State of New York, 121 AD2d 612).

There remains for our consideration the seat belt issue. In this regard, the State provided an automotive medical engineering scientist who was qualified to give expert testimony with respect to the effect of the decedent's failure to wear a seat belt. The State expert expressed the opinion, based on his examination of a photograph of the vehicle, that the decedent's vehicle was equipped with a seat belt consisting of a shoulder harness and a lap belt. He further stated that the decedent had failed to use this safety equipment and that had the decedent used the seat belt, although he might have suffered injury to his upper extremities as the vehicle rolled down the incline, he would not have been ejected from the vehicle and killed. The claimant described the available seat belt as consisting of a single strap that "came * * * across" an occupant's body. According to the claimant, the restraining system did not contain a lap belt. The claimant's expert stated that the kind of belt thus described would not necessarily have prevented the decedent from being ejected from the vehicle as it rolled down the incline, even if it had in fact been used. In this regard however, the State's expert stated that if the decedent had been using a seat belt without a pelvic part, the force with which he would have been pulled from that restraining device would have left lacerations and abrasions on the throat and the bottom of the chin. The autopsy report reveals no such lacerations.

The Court of Claims declined to make a factual determination with respect to the seat belt issue. It held that since neither an economist nor a physician testified for the defendant, it would be too speculative to draw any conclusion with respect to the question of whether the decedent's alleged failure to wear a seat belt should be considered in the mitigation of any damages awarded herein (see, Spier v Barker, 35 NY2d 444). This was error. The opinion of the State's expert to the effect that there was a causal connection between the alleged nonuse of an available seat belt and the injuries sustained was sufficient to require the court, in its fact-finding capacity, to make a determination as to whether the decedent was wearing a seat belt and, if not, whether the damages in this case should be mitigated (Spier v Barker, supra, at 447-448; Dowling v Dowling, 138 AD2d 345).

Since this case was tried without a jury, this court may weigh the evidence and grant the judgment that should have

been granted by the trial court *(see, Arnold v State of New York,* 108 AD2d 1021). Accordingly, based on the opinion of the State's expert, we conclude that the decedent failed to use an available seat belt and that that failure must be considered, under the circumstances of this case, in mitigation of the damages awarded herein *(see, Uribe v Armstrong Rubber & Tire Co.,* 55 AD2d 869). However, in view of the probability, not discounted by the State's expert, that the decedent would have been injured even if the seat belt had been worn, the judgment is modified and the award to the claimant reduced to the principal sum of $150,000, representing 50% of $300,000, plus interest from April 17, 1987, the date of the trial court's verdict. Mollen, P. J., Thompson, Kunzeman and Spatt, JJ., concur.