■ GREGORY J. LUSTYIK, Appellant-Respondent, v DONALD MANAHER, JR., Individually and as Executor of BARBARA J. MANAHER, Deceased, Defendant and Third-Party Plaintiff-Respondent-Appellant. MARK S. DICKINSON et al., Third-Party Defendants-Respondents-Appellants. [668 NYS2d 410] —Peters, J. (1) Cross appeals from a judgment and amended judgment of the Supreme Court (Dier, J.), entered December 11, 1996 and December 18, 1996 in Warren County, upon a verdict rendered in favor of plaintiff, and (2) appeal from an order of said court, entered April 18, 1997 in Warren County, which denied plaintiff's motion to amend the amended judgment.

Plaintiff sustained personal injuries when riding as a passenger in a Dodge Daytona automobile operated by third-party defendant Mark S. Dickinson.[1] Dickinson was proceeding southbound on State Route 9L in the Town of Queensbury, Warren County, when his vehicle collided with a vehicle driven by Barbara J. Manaher, who had attempted to make a left-hand turn at the intersection. Plaintiff, not wearing a seat belt at the time, was taken by ambulance to the hospital where he was treated for lacerations and injuries to his forehead, chin, lip and legs. Upon his commencement of this action against, *inter alia*, Manaher,[2] a third-party action was commenced against the Dickinsons.

At trial, testimony was received from not only the parties[3] but also plaintiff's medical experts. Witnesses for defendant and the Dickinsons included Stanley Rayder, the patrol officer first on the scene at the accident, James Burson, an accident reconstructionist and James Somerset, a professor of engineering and owner of an engineering consulting company which also conducted studies involving automotive seat belt and crash tests with dummies. This prompted plaintiff to proffer the rebuttal testimony of Dino Rossini, a safety engineer who spe-

1. Such vehicle was owned by third-party defendant Larry L. Dickinson.
2. Manaher was deceased at the time of trial and was therefore substituted by defendant, individually and as executor of her estate.
3. There was an examination before trial transcript read of Manaher.

cialized in highway accident reconstruction and restraint systems.

The jury returned a verdict in favor of plaintiff, finding both defendant and the Dickinsons to be negligent in the operation of their vehicles: 80% fault was attributed to defendant and the remaining 20% fault was attributed to the Dickinsons. Plaintiff was awarded $25,000 for preverdict injuries and $500,000 for future pain and suffering. Upon the jury's finding that some of plaintiff's injuries were caused by his failure to use an available seat belt, it was directed to next consider the following question: "TO WHAT AMOUNT SHOULD PLAINTIFF'S TOTAL DAMAGES * * * BE REDUCED BECAUSE OF HIS FAILURE TO SUE [sic] THE SEAT BELT?" The jury responded with "$450,000". With counsel declining to have the jury polled after they were excused, Supreme Court announced the net verdict to be $75,000 to which counsel for all parties agreed. In a timely postverdict motion, plaintiff's counsel challenged the submission of the seat belt defense to the jury, contending that the testimony failed to establish a causal connection between plaintiff's injuries and his failure to wear a seat belt. Upon the denial of plaintiff's motion, counsel for the Dickinsons sought to reduce the verdict as excessive.

In February 1997 counsel for plaintiff moved to amend the judgment,[4] contending that it was the first time that he recognized that by the language of the special verdict sheet the total $525,000 damage award should have been reduced *to* $450,000 rather than *by* $450,000. In opposition thereto, counsel for the Dickinsons contended that plaintiff waived such objection when he agreed to the verdict on the record and when he failed to raise the issue in a posttrial motion. Defendant's counsel contended that the $75,000 amount reflected in the amended judgment was what the jury intended as shown by his inclusion of affidavits from five of the six jurors who voted to reduce. Upon the denial of plaintiff's motion, this appeal ensued.[5]

Our review reveals that plaintiff testified that he was not wearing his seat belt at the time of the accident, that his face hit the windshield and that glass therefrom was still surfacing from his lacerations at the time of trial. Burson testified that seat belts were effective in preventing the occupant from hitting the windshield during a front-impact collision and, as to

---

**4.** The original judgment, dated December 11, 1996, was superseded by an amended judgment dated December 18, 1996.

**5.** Defendant and the Dickinsons cross-appealed from the judgment and amended judgment.

those collisions which involve occupants or objects within a car as it was decelerating, seat belts would prevent resulting head injuries. Somerset testified that the seat belt is designed primarily to restrain the passenger from moving forward within the vehicle especially in a front to rear-type of collision. He testified that if the vehicle gets hit directly in the front or from any angle from 45 degrees to the right or left, a seat belt is the most effective restraint system. Working from the type of seat belt system used in a 1989 Dodge Daytona, Somerset explained how the use of a seat belt prevents contact with the windshield or the dashboard. Rossini, testifying for plaintiff, even admitted that in crash tests conducted on the make and model of the car here involved, a belted dummy's face never came into contact with the windshield on the passenger side. Based upon the aforementioned testimony, with all such witnesses properly qualified as experts, we find that Supreme Court acted within its discretion in submitting the seat belt defense to the jury (*see, Aylesworth v Evans*, 225 AD2d 850; *Dowling v Dowling*, 138 AD2d 345).

Since evidence pertaining to the failure to use an available seat belt goes directly to the issue of mitigation of damages (*see, Spier v Barker*, 35 NY2d 444), we next review the jury's reduction of its damage award based upon its finding that the use of an available seat belt would have reduced plaintiff's injuries. While we agree that jurors' statements given after the dismissal of the jury may be considered to correct mistakes that have been characterized as clerical or ministerial in nature (*see, Grant v Endy*, 167 AD2d 807, 808; *McStocker v Kolment*, 160 AD2d 980, 981), we have repeatedly held that " 'a misunderstanding related to what monetary amount is referenced by "total damages" on the jury verdict' does not constitute such an error" (*Alkinburgh v Glessing*, 240 AD2d 904, 905, quoting *Walden v Otis El. Co.*, 178 AD2d 878, 880). There appears to have been confusion among counsel and Supreme Court as to the monetary amount awarded, but nothing in this record indicates confusion among the jurors in reaching their verdict.

Accordingly, we find no basis upon which Supreme Court could have considered the juror affidavits and conclude that it lacked authority to alter, amend or waive that amount reported on the official verdict sheet (*see, id.*). The reasoning underlying the immutability of such rule was to insure "the finality of verdicts, [the prevention of] juror harassment by disappointed litigants or their attorneys, and [the encouragement of] 'frankness and freedom of discussion and conference' among the jurors" (*Sharrow v Dick Corp.*, 86 NY2d 54, 60-61, quoting *Mc-*

*Donald v Pless*, 238 US 264, 267-268; *see, Grant v Endy, supra*). In finding that Supreme Court had no authority to amend the judgment, we hereby reinstate the first verdict as reported on the special verdict sheet which clearly indicates that the total damages should be reduced *to* $450,000 because of plaintiff's failure to use the seat belt (*see, Alkinburgh v Glessing, supra*).

In so finding, we must agree with defense counsel that the verdict is excessive in light of the medical evidence. Finding the $450,000 award to "deviate[ ] materially from what would be reasonable compensation" (CPLR 5501 [c]), we hereby set aside the verdict and order a new trial on the issue of damages (*see, Alkinburgh v Glessing, supra*) unless all parties agree to a reduction of the total award to $100,000.

Cardona, P. J., White, Spain and Carpinello, JJ., concur. Ordered that the judgment, amended judgment and order are modified, on the law and the facts, without costs, by (1) reinstating the total amount of damages awarded to plaintiff of $450,000, (2) reversing so much thereof as awarded said amount to plaintiff, and (3) ordering a new trial on the issue of damages unless, within 30 days after service of a copy of this Court's order, plaintiff stipulates to reduce the verdict in his favor to $100,000, in which event the judgment, amended judgment and order, as so modified and reduced, are affirmed.