Robert J. ZOLLINGER and Robin
Zollinger, Plaintiffs

v.

OWENS–BROCKWAY GLASS
CONTAINER, INC.,
Defendant.

No. 00–CV–1824.

United States District Court,
N.D. New York.

Oct. 31, 2002.

Michaels & Smolak, P.C., Auburn, NY (Michael G. Bersani, of counsel), for Plaintiffs.

Hancock & Estabrook, LLP, Syracuse, NY (Michael A. Oropallo, of counsel), for Defendant.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiffs Robert and Robin Zollinger ("plaintiffs") commenced the instant per-

sonal injury action against Defendant Owens–Brockway Glass Container, Inc. arising out of a forklift accident whereby Robert Zollinger's ("Zollinger" or "plaintiff") left foot was injured. Plaintiffs now move for partial summary judgment seeking to (1) preclude defendant from asserting a seat belt defense and otherwise mentioning the use (or non-use) of a seat belt at trial; (2) dismissing defendant's defense pursuant to New York Civil Practice Law and Rules Art. 16; and (3) precluding the testimony of defendant's proffered expert witness. Defendant opposes. Oral argument was heard on August 16, 2002, in Utica, New York. Decision was reserved.

## II. FACTS

At all times relevant hereto, Zollinger was employed by A.C. Leadbetter & Sons, Inc. Defendant hired A.C. Leadbetter & Sons to rebuild a furnace at defendant's Auburn facility. On December 14, 1999, plaintiff and one of defendant's employees, David Hopkins ("Hopkins"), were operating forklifts in defendant's warehouse when they collided at an intersection of two aisles. Zollinger's forklift tipped over and he sustained the injury to his left foot. At the time of the accident, plaintiff was not wearing the seat belt on the forklift.

## III. STANDARD OF REVIEW

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir.1978)).

## IV. DISCUSSION

### A. Expert Testimony

Plaintiffs seek to exclude the testimony of defendant's proffered accident reconstruction expert Richard Otterbein ("Otterbein"). Plaintiffs argue that (1) defendant has failed to lay a foundation as to Otterbein's ability to testify as a seat belt expert; (2) Otterbein is not qualified as an accident reconstructionist; (3) expert testimony is not needed to determine whether it was reasonable for Hopkins to assume he was alone in the warehouse; (4) Otterbein's report and testimony is otherwise not based on adequate facts or data; and (5) defendant failed to make a full disclosure as required by Fed.R.Civ.P. 26(a)(2)(B). Defendant disagrees, contending that Otterbein possesses all the necessary prerequisite training and education to form an opinion on the issues in this case, he conducted a thorough analysis of this matter, his opinion is helpful to a trier of fact in understanding evidence and/or determining issues concerning the accident, and plaintiff's arguments go to

the weight of Otterbein's testimony, rather than its admissibility.

Rule 702 of the Federal Rules of Evidence provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

A district court is vested with broad discretion whether to admit expert testimony. *See United States v. Feliciano*, 223 F.3d 102, 120 (2d Cir.2000), *cert. denied sub. nom.* 532 U.S. 943, 121 S.Ct. 1406, 149 L.Ed.2d 348 (2001). As an initial matter, expert testimony is admissibly only "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702. Once this threshold has been met, the expert's testimony must be shown to be based on more than unsupported speculation or subjective belief. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). It need not, however, rise to the level of a known certainty. *Id.* The testimony must rest on a reliable foundation and be relevant to the issues presented. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir.2002).

The standards of Fed.R.Evid. 401 dictate whether the testimony is relevant. *Id.* Rule 702 itself sets forth some guidelines for determining whether the testimony rests on a reliable foundation.[1] These factors are not, however, exclusive. Id. The inquiry must necessarily be flexible and correlate to the facts of the particular case. Id. "In undertaking this flexible inquiry, the district court must focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions." *Id.* That is not, however, to suggest that a district court must remain blind to the expert's ultimate conclusions. To the contrary, " '[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.' " *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). In short, expert testimony should be admitted if the expert demonstrates "good grounds" for his or her conclusions. *Id.*

Here, defendant's expert offers testimony concerning (1) the cause of the accident (whether Zollinger's forklift tipped because of the impact with Hopkins' forklift or Zollinger's alleged erratic maneuvering to avoid the impact); and (2) whether Zollinger would have sustained a foot injury had he used his seat belt.

### 1. *Whether Mr. Otterbein Is Qualified As An Expert*

An expert may be qualified based upon knowledge, skills, experience, education or training. *See* Fed.R.Evid. 702. Based on the totality of the circumstances, Otterbein is qualified to testify concerning the effects of plaintiff's nonuse of a seat belt and the manner and cause of the accident (*i.e.* what caused the forklift to tip). Otterbein has a Bachelor of Science

---

**1.** Rule 702 requires consideration of whether (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness applied the principles and methods to the facts of the case.

degree in Mechanical Engineering and a Master of Science degree. He has education in the design and use of materials handling vehicles, including forklifts. He has been certified to operate materials handling vehicles. Otterbein has experience in operating forklifts and engineering material handling facilities, which includes the evaluation of forklift-type industrial trucks. He has performed engineering services for various forklift manufacturers. He also has investigated accidents and performed accident reconstruction analyses for both motor vehicles and material handling equipment for over twenty years. In his deposition, Otterbein stated that he is involved with approximately six accident reconstruction cases per year that involve the movement of vehicles. (Otterbein Dep., at 16.) Otterbein also has previously testified in forklift accident cases. He has "gained practical experience in the use of safety devices [including seat belts]." (Otterbein Aff., at ¶ 19.) Based on Otterbein's education, training, skills, knowledge, and practical experience, he is qualified to testify as an expert on the use of a seat belt and for purposes of reconstructing the accident.

### 2. Whether Specialized Knowledge Assists The Trier of Fact

■ Plaintiffs argue that much of Otterbein's testimony is based upon his opinion that it was reasonable for Hopkins to believe he was alone at the time of the accident and, therefore, to operate his forklift in the manner that he did.[2] In this regard, plaintiffs take issue with Otter-

bein's opinion that Hopkins "was operating his forklift in a safe and prudent manner." (Bersani Aff.., Ex. O, at p. 4.) Plaintiffs argue that expert testimony is not needed to ascertain whether it was reasonable for Hopkins to believe that he was alone in the warehouse at the time of the accident and, therefore, operate the forklift in violation of applicable OSHA regulations and other guidelines.

■ Plaintiffs are correct that expert testimony is not needed on the ultimate issue of whether Hopkins operated his forklift in a safe and prudent manner. The trier of fact is perfectly capable of evaluating the totality of the evidence in this regard (including evidence regarding OSHA regulations, ASME's and defendant's guidelines for operating forklifts, Hopkins' testimony regarding his operation of his forklift and the number of other individuals he believed to be in the warehouse, and Hopkins' reasons for allegedly not complying with any applicable regulations and guidelines) and determining whether Mr. Hopkins was operating the forklift in a safe and prudent manner.[3] See, e.g., Andrews v. Metro North Commuter R. Co., 882 F.2d 705, 708 (2d Cir. 1989) (jury did not need special training or expertise to decide whether a train platform was a "safe place," but could formulate their own opinion based on the testimony presented). Technical expertise will be of little valuable help to the trier of fact on this issue. See Raskin v. Wyatt Co., 125 F.3d 55, 66 n. 5 (2d Cir.1997) ("For expert testimony to be admissible, it must

2. Plaintiff argues that, at the time of the accident, Hopkins was operating his forklift inappropriately and not in accordance with applicable rules and guidelines. For example, it is alleged that Hopkins was operating his forklift at an excessive speed and failed to sound his horn before entering the intersection at which he and Zollinger collided.

3. There is no indication in the record that defendant otherwise requires expert testimony to establish whether Hopkins operated his forklift in a safe and prudent manner. For example, there is no evidence of industry customs or standards regarding the operation of a forklift, and/or the deviation from OSHA rules and other applicable guidelines when alone in a warehouse.

help the jury to understand the evidence or determine a fact in issue.") (internal quotations omitted); *United States v. Schatzle*, 901 F.2d 252, 257 (2d Cir.1990) ("[A] district court may exclude ... testimony under Federal Rules of Evidence 702 when it is not helpful to the jury.").[4] On the other hand, Otterbein's testimony will be helpful to the trier of fact in determining whether Zollinger's forklift tipped as a result of the impact with Hopkins, Zollinger's alleged evasive maneuvering, or a combination of factors. Expert testimony similarly could prove useful to aid the jury in determining how the accident may have caused Zollinger's injury and how the use of a seat belt may or may not have prevented some or all of the injuries.[5]

### 3. Whether Mr. Otterbein's Opinions Are Based Upon Reliable Facts And Data

Plaintiffs also seek to exclude Otterbein's testimony that Zollinger's alleged evasive actions prior to the impact contributed to the forklift tipping and that the forklift began to tip before the impact. Plaintiffs argue that the evidence in the record and commonsense do not support Otterbein's conclusions.

4. Even assuming such testimony would be helpful to the trier of fact, it would nevertheless be inadmissible. Otterbein's testimony regarding whether Hopkins operated his forklift in a safe and prudent manner is based upon unreliable facts and data including the expert's assessment of the credibility of another witness (*i.e.* Hopkins), *United States v. Scop*, 846 F.2d 135, 142 (2d Cir.1988), and is not based on any objectively verifiable date. Otterbein testified at deposition that he believed it was reasonable for Hopkins to believe he was alone in the warehouse. This conclusion was based solely on Hopkins' opinion and without any independent investigation. This is an insufficiently reliable basis upon which to form an opinion.

■ In his affidavit, Otterbein states that there is physical evidence and data gathered after the accident suggesting that Zollinger attempted to take evasive action approximately nine feet before the impact. Specifically, he states that "[b]ased upon the recorded measurements and position of the skid marks for both trucks, and through general engineering principles and calculations, I have been able to determine that Mr. Zollinger's evasive action occurred prior to the impact." (Otterbein Aff., at ¶¶ 10, 13.) The use of skid mark measurements and positions and the relative speed and direction of the forklifts is a reliable basis upon which to substantiate an accident reconstruction analysis. Plaintiffs' arguments go to the weight of Otterbein's testimony and do not provide a basis for excluding his testimony.[6]

### 4. Whether Defendant Failed To Make A Proper Expert Disclosure

Plaintiffs also argue that Otterbein's testimony should be precluded because he failed to disclose the court names and case numbers for the cases in which he has given testimony in the last four years. Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires that an expert

5. As will be discussed *infra*, the nonuse of a seatbelt is admissible in limited circumstances.

6. For example, Otterbein states that, based upon the skid marks and other data, Zollinger took evasive measures before the impact with Hopkins by swerving to the right to avoid the collision, causing his forklift to tip over to the left. Plaintiffs argue that this conclusion is illogical. Plaintiffs maintain that, logically, plaintiff would have swerved to the *left* (not the right) if he was attempting to avoid Hopkins who was approaching from the right. While plaintiffs' contention is sensible, sense does not always prevail in an emergency situation. It is for a jury to assess the totality of the evidence presented and make the ultimate decision as to what happened.

report contain, among other things, "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years." Case law has defined this requirement to include, at a minimum, the name of the court, the name of the parties, the case number, and whether the testimony was given at deposition or trial. *See Giladi v. Strauch*, No. 94 Civ. 3976, 2001 WL 388052, at *3 (S.D.N.Y. Apr.16, 2001) (and cases cited therein).

■ Otterbein initially disclosed all cases in which he testified in the preceding four years "to the best of [his] recollection." His disclosure included the case name, the city and state where he testified, the year of his testimony, and whether the testimony was in the form of a deposition or trial testimony. The disclosure did not include court names and case numbers. In his affidavit submitted in opposition to plaintiff's motion for summary judgment and to preclude expert testimony, Otterbein attached a supplemental list of additional information concerning some of the cases in which he testified in the preceding four years. This supplemental disclosure included court names and case numbers. He stated that "[t]his information was obtained after a good faith search of . . . records and materials in the company's possession. It is not my practice to retain information such as court docket numbers." (Otterbein Aff., at ¶ 20.)

Although defendant did not initially supply as much information as it should have, and it should be more diligent in the future, there is no evidence that plaintiff has been prejudiced thereby warranting the drastic remedy of preclusion. *See Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir.1988) (holding preclusion is too drastic a remedy where a party identified an expert witness but failed to subsequently supplement the disclosure with additional information). "The obvious purpose of providing the lists of prior cases is to enable opposing counsel to obtain prior testimony of the expert." *Coleman v. Dydula*, 190 F.R.D. 316, 318 (W.D.N.Y.1999). Here, plaintiffs do not contend that they were prevented from reviewing Otterbein's prior testimony or that the deficiencies in defendant's expert report has otherwise caused prejudice.

### B. *The Seat Belt Defense*

■ Plaintiffs seek to strike defendant's seat belt defense and preclude defendant from mentioning seat belts at trial. Section 1229–c(3) of New York's Vehicle & Traffic Law provides that "[n]o person shall operate a motor vehicle unless such a person is restrained by a safety belt." The statute further provides that the failure to wear a seat belt is inadmissible as evidence concerning the issue of liability, but may be asserted as an affirmative defense on the issue of mitigation of damages. N.Y. Veh. & Traff. Law § 1229–c(8). Because the forklift at issue was not operated or driven upon a public highway, it is not a "motor vehicle" as that phrase is used in section 1229–c(3). *See* N.Y. Veh. & Traff. Law §§ 1229–c(4), 388, 125. Accordingly, section 1229–c is inapplicable here.

■ Prior to section 1229–c's enactment, the New York Court of Appeals held that, in the context of motor vehicles, the non-use of a seat belt is an affirmative defense on which the defendant has the burden of pleading and proving that the plaintiff's non-use of an available seat belt "resulted in increasing the extent of his injuries and damages." *Spier v. Barker*, 35 N.Y.2d 444, 449–50, 363 N.Y.S.2d 916, 323 N.E.2d 164 (1974). As with section 1229–c, the use of a seat belt was irrelevant to the issue of liability. *Id.* ("[T]he plaintiff's nonuse of an available seat belt should be strictly limited to the jury's de-

termination of the plaintiff's damages and should not be considered by the triers of fact in resolving the issue of liability."); *see also Newton v. Aqua Flo Co.*, 106 A.D.2d 919, 920, 483 N.Y.S.2d 133 (4th Dep't 1984). The seat belt defense "should not be submitted to the jury unless the defendant can demonstrate, by competent evidence, a causal connection between the plaintiff's nonuse of an available seat belt and the injuries and damages sustained." *Spier*, 35 N.Y.2d at 450, 363 N.Y.S.2d 916, 323 N.E.2d 164.

 Although *Spier* discussed the seat belt defense in the context of motor vehicles operated on the public highways, the analysis is equally applicable to the instant matter. There is no statute or regulation requiring forklift operators to wear a seat belt. *See generally* 12 N.Y.C.R.R. Ch. I, Subch. A; 12 N.Y.C.R.R. § 23–9.8. Accordingly, the failure to use a seat belt cannot be negligence *per se*. *Spier*, 35 N.Y.2d at 450–51, 363 N.Y.S.2d 916, 323 N.E.2d 164. "[H]olding a nonuser contributorily negligent would be improper since it would impose liability upon the plaintiff for all his injuries though use of a seat belt might have prevented none or only a portion of them." *Id.*[7] In light of a plaintiff's duty to mitigate damages and the doctrine of avoidable consequences, "[w]hen ... [a person] may readily protect himself, at least partially, from the consequences of a collision, ... the burden of buckling an available seat belt may, under the facts of the particular case,

be found by the jury to be less than the likelihood of injury when multiplied by its accompanying severity." 35 N.Y.2d at 452, 363 N.Y.S.2d 916, 323 N.E.2d 164. Thus, as in *Spier*, a plaintiff's failure to use an available seat belt is admissible on the issue of damages only, provided that the defendant has first pleaded the defense and demonstrated a causal connection between the plaintiff's nonuse of the seat belt and the resulting injuries and damages. *See Caiazzo v. Volkswagenwerk A.G.*, 647 F.2d 241, 246 (2d Cir.1981).

Here, although it appears likely that defendant will seek to invoke the seat belt defense, it has not yet been properly pleaded. *See Brodvin v. Hertz Corp.*, 487 F.Supp. 1336, 1338–39 (S.D.N.Y.1980). Contrary to defendant's assertion, its Ninth Affirmative Defense is not sufficiently specific to incorporate the seat belt defense.[8] *See id.* Because plaintiffs were well aware of defendant's intent to raise the seat belt defense, plaintiffs conducted discovery concerning the effect of the failure to wear a seat belt, and there is no evidence of prejudice in the record, notwithstanding defendant's failure to file a proper motion for leave to amend, it may file an amended answer including the seat belt defense.[9]

Plaintiffs next argue that defendant should be precluded from asserting the seat belt defense because it has failed to show a causal connection between Zollinger's nonuse of the seat belt and the result-

---

7. As in *Spier*, Zollinger's failure to wear a seat belt is not claimed to be an alleged cause of the accident.

8. Defendant's Ninth Affirmative Defense states "[t]hat any alleged injuries or damages to Plaintiff resulted from Plaintiff's own purposeful actions and his conscious disregard of and refusal to obey applicable laws, regulations, directions, customs or practices." As noted, there are no New York State laws or regulations requiring that forklift operators

wear seat belts. Moreover, it is far from clear that the use of a seat belt in a forklift constitutes a disregard of "directions, customs or practices."

9. Giving defendant leave to amend notwithstanding the failure to file a motion is particularly equitable under the circumstances of this case where plaintiff also seeks permission to file an amended pleading without complying with the applicable rules of procedure. *See* discussion *infra* at III(C).

ing injuries and damages. As previously discussed, the burden is on defendant to establish such a causal connection before the seat belt defense can be submitted to the trier of fact. Defendant's expert opined that:

> the injury sustained by Mr. Zollinger would have been readily avoided had Mr. Zollinger been properly trained to operate a forklift and to utilize the restraint (belt) system provided. . . . Effective training would likely have resulted in Mr. Zollinger maintaining stable control of his forklift, utilizing his belt restraint and keeping his body within the confines of the occupant compartment and thus avoiding his injury. . . . Had Mr. Zollinger made reasonable observations while traveling through the Owens plant, and/or been trained to utilize safety equipment provided and maintained his seated position on the forklift during a tipping event, his injuries would have been avoided.

In his affidavit, he states that:

> It is my opinion, to a reasonable degree of engineering certainty, that had Mr. Zollinger been wearing his seat belt, and had he the [sic] been certified like Mr. Hopkins in operating a forklift, even if a tip over would have occurred, that Mr. Zollinger's foot-crush injury would have been averted.

> This opinion is based upon the purposes of a seat belt, the fact that Mr. Zollinger's forklift truck was equipped with a working seat belt, and that a certified operator of forklifts is trained to stay with the vehicle and, in an impact situation, assume a ready position inside the operating lines of the truck. Mr. Zollinger did not comply with this safety guideline. . . .

It is my opinion that had Mr. Zollinger been wearing his seat belt, he would have avoided injury.

(Otterbein Aff., at ¶¶ 15–16, 19.) In formulating his opinions that plaintiff would not have suffered a foot injury had he remained seated inside the forklift, Otterbein admittedly did not review the specifications for the forklift driven by Zollinger, did not visit the scene of the accident, did not measure the seat cowling that is alleged to have landed on plaintiff's foot, did not measure any other dimensions of the forklift, and stated at deposition that he did not know whether a forklift driver's leg could dangle over the seat cowling while wearing a seat belt.[10] Further, the majority of his analysis is devoted to ascertaining the cause of the accident (whether Zollinger's forklift tipped over as a result of the impact with Hopkins' forklift or because of attempted evasive actions taken by plaintiff) rather than the cause of the injury. (*See generally* Otterbein Aff.) Notwithstanding these potential deficiencies in Otterbein's testimony, which may present plaintiffs with fertile grounds for cross-examination at trial, defendant has presented sufficient evidence to defeat plaintiff's motion in this regard. *See Lustyik v. Manaher*, 246 A.D.2d 887, 668 N.Y.S.2d 410 (3d Dep't 1998); *Cappadona v. State*, 154 A.D.2d 498, 546 N.Y.S.2d 124 (2d Dep't 1989); *compare Siegfried v. Siegfried*, 123 A.D.2d 621, 507 N.Y.S.2d 20 (2d Dep't 1986) ("The defendants were properly precluded from eliciting this testimony [concerning plaintiff's use of a seat belt] and arguing the seat belt defense during the damages trial as the record indicates that they did not intend to present any competent evidence indicating that any of plaintiff's injuries were caused by his failure to wear a seat belt."); *see also Thy Tran v.*

---

**10.** It is alleged that plaintiff's foot was pinned under the seat cowling of the forklift (not the entire forklift), and that this is what caused the injury to his foot.

*Avis Rent A Car, Inc.*, 289 A.D.2d 731, 732, 734 N.Y.S.2d 662 (3d Dep't 2001) ("[A]n affirmative defense should not be dismissed if there is any doubt as to its availability."). Assuming defendant amends its Answer to include the seat belt defense, Otterbein's testimony and affidavit provide a sufficient basis for submitting the seat belt defense to the trier of fact. That testimony provides a sufficient predicate from which a fair minded trier of fact could reasonably conclude that Zollinger's use of a seatbelt would have prevented, or minimized, his injuries.

### C. Whether Defendant's Defense Pursuant to CPLR Article 16 Should Be Dismissed

Plaintiffs' final argument is that defendant's Fourth Affirmative Defense pursuant to N.Y.C.P.L.R. § 1601 should be dismissed because (1) he has not sustained a "grave injury" as defined in section eleven of the N.Y. Workers' Compensation Law; and (2) the Article 16 defense is not applicable to efforts to apportion liability between a defendant and its employees where the defendant is vicariously liable for the employees' conduct. Defendant responds that plaintiffs failed to properly plead an exception to Article 16 as is required under New York law. Defendant further responds that the exceptions to Article 16 are otherwise inapplicable because there are no non-delegable duties at issue and this case does not involve the doctrine of respondeat superior. In reply, plaintiffs concede that they failed to properly plead an exception to Article 16 and ask for leave to amend their Complaint.

Article 16 of New York's Civil Practice Law and Rules modifies the common law principles of joint and several liability with respect to non-economic damages in personal injury actions. *See Rangolan v. County of Nassau*, 96 N.Y.2d 42, 46, 725 N.Y.S.2d 611, 749 N.E.2d 178 (2001). The general rule established by section 1601(1) is that a defendant whose proportionate share of the fault is fifty percent or less is liable for the plaintiff's non-economic loss only to the extent of its actual proportionate share (*i.e.* the defendant is severally, but not jointly, liable). *Id.* Thus, if a defendant is found to be 48% responsible for a plaintiff's non-economic damages, then that defendant cannot be compelled to pay for 100% of those damages, but only its 48% share. Where a defendant's proportionate share of the fault is found to be greater than fifty percent, then the defendant is both jointly and severally liable. In cases where a plaintiff sustains an injury on the job, but has not sustained a "grave injury" within the meaning of section eleven of the Workers' Compensation Law such that a non-employer defendant would not be entitled to maintain an action for contribution or indemnification against the plaintiff's employer, *see* N.Y. Workers' Comp. Law § 11,[11] the employer's culpable conduct is not considered in determining the defendant's equitable share. *See* N.Y.C.P.L.R. § 1601. Finally, where liability is imputed to a defendant because of a non-delegable duty or under the doctrine of respondeat superior, the defendant cannot claim that it shares no responsibility for purposes of apportioning liability. *See* N.Y.C.P.L.R. § 1602(2)(iv); *Rangolan*, 96 N.Y.2d at 47, 725 N.Y.S.2d 611, 749 N.E.2d 178. Rather, it is charged with the equitable share attributable to its agent or employee. A defendant seeking to invoke section

---

11. Section eleven provides, in part, that

An employer shall not be liable for contribution or indemnity to any third person based upon liability for injuries sustained by an employee acting within the scope of his or her employment for such employer unless such third person proves through competent medical evidence that such employee has sustained a "grave injury."

1601(1)'s protection has "the burden of proving by a preponderance of the evidence its equitable share of the total liability." N.Y.C.P.L.R. § 1603. A plaintiff seeking to avoid the limitations of liability set forth in § 1601(1) has the burden of proving "by a preponderance of the evidence that one or more of the exemptions set forth in subdivision one or section sixteen hundred one or section sixteen hundred two applies." *Id.*

Defendants are correct that plaintiffs have the burden of pleading an exception to § 1601(1). *See Morales v. County of Nassau,* 94 N.Y.2d 218, 703 N.Y.S.2d 61, 724 N.E.2d 756 (1999); *Cole v. Mandell Food Stores,* 93 N.Y.2d 34, 687 N.Y.S.2d 598, 710 N.E.2d 244 (1999). Plaintiffs admittedly failed to do so here. Notwithstanding this failure and the failure to properly move for leave to amend the Complaint, plaintiffs may file an amended Complaint asserting an Article 16 exception. Just as defendant has been granted leave to amend its Answer to include a seat belt defense, plaintiffs should be granted leave to amend their Complaint to include an Article 16 exception.[12] *See Morales,* 94 N.Y.2d at 223–24, 703 N.Y.S.2d 61, 724 N.E.2d 756; *Cole,* 93 N.Y.2d at 39, 687 N.Y.S.2d 598, 710 N.E.2d 244 ("[I]n keeping with the liberal rules of [pleading], courts have generally permitted plaintiffs to amend the pleadings at various points throughout an action in order to comply with CPLR 1603."). Defendant is well aware that plaintiffs intend to avoid the application of section 1601 and has not identified any prejudice that would result from such an amendment.

■■■ Consistent with the plain terms of Article 16, to the extent that plaintiffs plead and prove by a preponderance of the evidence that Zollinger has not suffered a grave injury within the meaning of section eleven of the Workers' Compensation Law,[13] any degree of culpable conduct attributable to his employer may not be considered in determining defendant's equitable share. Although it appears that plaintiff does not suffer from a grave injury, plaintiffs have not presented any competent evidence regarding the extent of Zollinger's injuries and, therefore, that issue cannot not now be decided on summary judgment.

As Article 16 also provides, any conduct for which defendant is liable pursuant to the theory of *respondeat superior* is to be attributed to defendant for purposes of determining its equitable share under Article 16. Again, plaintiffs have the burden of proof on this issue. It is unclear at this point to what extent defendant will be held liable (if at all) for the actions of its agents or employees, and whether it will seek to point the finger of liability at its agents or employees or others. Thus, it cannot now be determined whether this exception applies to this case. Accordingly, subject to any exemptions that plaintiffs plead and prove by a preponderance of the evidence, defendant may seek to avail itself of section 1601(1)'s protection by proving by a preponderance of the evidence that its lia-

---

12. The parties should not construe this Order as condoning their failure to follow the Federal Rules of Civil Procedure and the local rules of this District regarding the amendment of pleadings.

13. "Grave injury" is defined to mean "one or more of the following: death, permanent and total loss of use or amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear, permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain caused by an external physical force resulting in permanent total disability." N.Y. Workers Comp. Law § 11.

bility is 50% or less in relation to other tortfeasors. *See* N.Y.C.P.L.R. § 1603.

## V. CONCLUSION

There is no need for expert testimony on the issue of whether Hopkins was operating his forklift in a safe and prudent manner. Provided it properly amends its Answer, defendant may offer proof in support of a seat belt defense at the damages phase of a trial. Defendant also may invoke the protection of N.Y.C.P.L.R. § 1601, subject to its terms, limitations, and any applicable exceptions.

Accordingly, it is

ORDERED that:

1. Plaintiffs' motion to preclude the expert testimony of David Otterbein is GRANTED IN PART. Expert testimony is not needed to establish whether Hopkins was operating his forklift in a safe and prudent manner at the time of the accident. In all other respects, plaintiff's motion to preclude Otterbein's testimony is DENIED.

2. Plaintiffs' motion to strike the seat belt defense is DENIED. On or before November 15, 2002, defendant may amend its Answer to plead a seat belt defense.

3. Plaintiffs' motion to strike defendant's Article 16 defense is DENIED. On or before November 15, 2002, plaintiffs may amend their Complaint to plead an exception to Article 16.

IT IS SO ORDERED.