[994 NYS2d 605]

DMF GRAMERCY ENTERPRISES, INC., Respondent, v THE LILLIAN TROY 1999 TRUST, by Stuart Troy and Others, Trustees, et al., Appellants, et al., Defendant.

First Department, October 21, 2014

**APPEARANCES OF COUNSEL**

*Law Offices of Jeffrey H. Roth*, New York City (*Jeffrey H. Roth* of counsel), for appellants.

*Jaffe Ross & Light LLP*, New York City (*Burton Ross* and *Bill S. Light* of counsel), for respondent.

**OPINION OF THE COURT**

Acosta, J.

▮▮ The question presented on appeal is whether a landlord has an unfettered right to withhold or terminate its consent to a tenant's operation of a sidewalk café, where the café has existed for at least 50 years and the lease contemplates the use of the sidewalk for that purpose. We hold that defendants may not withhold or terminate their consent, irrespective of whether they have a good-faith basis for doing so, because the lease expressly and unequivocally requires them to consent to plaintiff's operation of the sidewalk café. In any event, we find that the implied covenant of good faith and fair dealing would otherwise restrict defendants' ability to deny consent, and that they have failed to make a satisfactory showing of good faith in this case.

Plaintiff, the net lessee and current tenant assignee of defendants-appellants' premises, operates a restaurant and adjoining sidewalk café under the business name Pete's Tavern. Defendants-appellants (hereinafter referred to as defendants) are the trust that presently owns the building and an individual trustee. In order to operate a sidewalk café in New York City, a tenant must have a license issued by the New York City Department of Consumer Affairs (DCA), which requires the building owner's consent. Over the years, defendants or their predecessor in interest completed several consent forms. However, by letter to the DCA dated March 7, 2012, defendants purported to terminate their consent to operate the sidewalk café and refused to consent to a new license.

Plaintiff commenced the instant action in Supreme Court, seeking declarations that it is permitted to operate the sidewalk café pursuant to the lease and that defendants are required to provide their consent, and a permanent injunction barring defendants from revoking their consent. The parties stipulated to several facts, including that the sidewalk café has been in existence since at least 1964 and existed when the lease was executed that year.[1] In addition, the parties stipulated that "[t]he words 'sidewalk café' are not used, stated or referenced in the Lease, the Deeds and/or the Net Lease."[2]

---

**1.** The parties further stipulated that, according to the DCA's records, "the sidewalk café may have even existed as early as 1938."

**2.** Although the quoted language refers to three or more documents ("the Lease, the Deeds and/or the Net Lease"), earlier paragraphs in the parties' stipulation of facts refer only to one "Lease." Paragraph 2 of the stipulation of facts states, "Plaintiff is the net lessee of the Premises by assignment of the written agreement of net lease dated November 30, 1964 of the Premises

After reviewing the stipulated facts and the lease, the trial court determined that "[n]othing in the lease or other evidence in this case indicates any reservation of rights in the landlord to withhold consent in its sole discretion," and permanently enjoined defendants from revoking their consent to plaintiff's operation of the sidewalk café.

■■ First, the lease contains a provision that is dispositive of this appeal. Paragraph 82 reads, in pertinent part,

> "*Landlord shall, at any time, as often as required, promptl[y] execute applications and any other required documents to enable Tenants* or the subtenants operating the restaurant in the Demised Premises *to obtain and maintain a sidewalk cafe [on] the public sidewalks adjoining said premises*, and for any other legal purposes required in the operation or use of sai[d] premises by Tenants or subtenants therein" (emphasis added).

This clause unequivocally requires defendants to consent to plaintiff's operation of the sidewalk café and to execute the necessary documents (including consent forms); it does not even allow defendants to withhold their consent upon a showing of good faith. We cannot ignore the fact that the record thus belies the parties' stipulation that the term "sidewalk café" does not appear in the lease.[3] While *litigants* are ordinarily bound by their stipulations of fact (*see e.g. Christian Legal Soc. Chapter of the Univ. of Cal., Hastings College of Law v Martinez*, 561 US 661 [2010]), the Court cannot be bound by a stipulation of fact that is contrary to the very evidence submitted by the parties (*see Universal Camera Corp. v NLRB*, 340 US 474, 497 [1951]; *Donovan v Hamm's Dr. Inn*, 661 F2d 316, 317 [5th Cir 1981] [appellate court would reverse stipulation of fact "if the evidence contrary to the stipulation were substantial"]). Moreover, the Court has its own fact-finding authority and, "[i]n this nonjury case, it is within the province of this court to grant the judgment which, upon the evidence should have been granted by the trial court" (*De Mayo v Yates Realty Corp.*, 35 AD2d 700, 701 [1st Dept 1970], *affd* 28 NY2d 894 [1971]; *Society of N.Y. Hosp. v Burstein*, 22 AD2d 768 [1st Dept 1964]; *accord Cappadona v State of New York*, 154 AD2d 498, 500-501 [2d Dept 1989]).

In any event, we will address defendants' argument—based on the stipulated absence of the term "sidewalk café" from the

---

('Lease') made between landlord, Lillian Troy and [plaintiff's assignors]." There is no other mention of a "Net Lease" as distinguished from the "Lease."

3. There is no indication that the subsequent lease modifications in 1987 and 1990 had any effect on paragraph 82 of the 1964 lease.

lease—that they may terminate their consent absent a showing of good faith, to ensure that the parties have been sufficiently heard.

We note initially defendants' correct assertion that the sidewalk café is not part of the leased premises. Article 1 of the lease delineates only the physical footprint of the building as the area to be demised. Such a description necessarily excludes the adjacent sidewalk, which is beyond the bounds of the demised premises and, in any case, is undisputedly owned by the City and could not be demised by defendants. In arguing that the sidewalk constitutes part of the premises, plaintiff relies on paragraph 42 of the lease, which essentially states that the tenant will not allow the demised premises or any part thereof to be used for unlawful purposes, and adds that the paragraph "shall not be construed to prohibit the present use thereof." Plaintiff's contention is that because the sidewalk café was in operation when the lease was executed, it is covered by the "present use" clause. However, that clause refers only to the beginning of the paragraph, which uses the phrase "the Demised Premises or any part thereof." Because the sidewalk is not part of the demised premises, the "present use" clause can only apply to the building itself (where the main restaurant, excluding the sidewalk café, is located).

Nevertheless, the lease gives plaintiff the right to make use of the sidewalk space. Paragraph 61, which states that "areas . . . extending beyond the building line . . . are not included within the Demised Premises," also provides that plaintiff "may occupy and use the same during the term of th[e] lease, subject to such laws, permits, rules and regulations as may be imposed by appropriate governmental authorities with respect thereto." To the extent that the phrase "areas . . . beyond the building line" is ambiguous—the lease does not define the term—we "look to the surrounding facts and circumstances to determine the intent of the parties" (67 Wall St. Co. v Franklin Natl. Bank, 37 NY2d 245, 248 [1975]; see Bensons Plaza v Great Atl. & Pac. Tea Co., 44 NY2d 791 [1978]). In view of the circumstances surrounding the execution of the lease—in particular, the stipulated fact that the sidewalk café existed at the time the lease was executed—we conclude that the parties contemplated the tenant's continued use of the sidewalk to operate the café (cf. Cookery Lafayette v Westerly Co., 2 AD2d 970, 970 [1st Dept 1956] [reversing determination that lease gave tenant right to use sidewalk for operation of café and remanding for new trial, where "(t)he true

intent of the parties . . . cannot be determined solely from the lease and other documentary evidence and there was no testimony on this point at the trial"]).

Having determined that the lease allows plaintiff to use and occupy the sidewalk for the operation of a sidewalk café, it necessarily follows that defendants cannot withhold or revoke their consent to that use absent a good-faith basis. As the Court of Appeals has explained,

> "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. While the duties of good faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included" (*511 W. 232nd Owners Corp. v Jennifer Realty Co.*, 98 NY2d 144, 153 [2002] [internal citations and quotation marks omitted]).

Because the stipulated facts demonstrate that the sidewalk café existed at the time of the lease's execution, plaintiff (through its assignor) was justified in understanding that the landlord promised to refrain from unreasonably withholding its consent to operate the sidewalk café. It is of no moment that paragraph 1 (d) of the lease refers to the "[r]evocable nature of the right, if any, to maintain . . . areas . . . beyond the building lines," because that language does not go so far as to give defendants the right to revoke their consent for any reason whatsoever. Furthermore, paragraph 1 (d) can be viewed alternatively as affirming that the landlord cannot guarantee the right because it is revocable by the City, the entity that owns the sidewalk and has the authority to grant sidewalk café licenses.

To permit defendants to withhold or revoke their consent at will would destroy plaintiff's right to "receive the fruits of the contract" inasmuch as those fruits are gained by operating the sidewalk café (*see 511 W. 232nd Owners Corp.*, 98 NY2d at 153).[4] As discussed above, the lease permits plaintiff to use the sidewalk for the operation of a sidewalk café, provided, of course, that such use is lawful. Plaintiff's sidewalk café can only be law-

---

4. Plaintiff alleges in its complaint that it derives approximately 40% of its revenue from the sidewalk café, and that the sidewalk café provides substantial seating capacity and draws additional customers to the restaurant.

ful if it obtains the consent of the landlord (a prerequisite to the grant of a license by the City). Accordingly, the landlord cannot obstruct plaintiff's operation of the sidewalk café by refusing in bad faith to consent. As the trial court observed, defendants did not reserve the right to terminate consent in their sole discretion. Therefore, their right to deny consent must be bridled by the implied covenant of good faith and fair dealing.

Defendants base their contrary argument largely on a misguided characterization of the consent form, which accompanied plaintiff's application for the license to operate a sidewalk café, as a "license agreement." The most recent consent form, which defendants completed in 2002, is titled "Owner's Affidavit of Consent to Operate a Sidewalk Café" (owner's affidavit). Defendants rely heavily on language in the owner's affidavit stating that their consent would remain in effect "until said consent is terminated in writing," and they cite case law on the construction of contracts to show that the language is unambiguous and binding on the parties. However, the argument that the quoted language permits defendants to terminate their consent *at will* requires a rather formidable leap in logic. The phrase "until said consent is terminated in writing" is indeed unambiguous, but it does not state that defendants may terminate their consent in their sole discretion. Nor, in any event, do we agree that language is binding on the parties. The owner's affidavit is not a contract (or a "license agreement") (*see Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584 [1999]); it is merely part of an application for a license. Thus, it does not modify the terms of the lease or abrogate plaintiff's right to use the sidewalk pursuant to the lease.

Finally, we find that defendants have not demonstrated a good-faith basis on which to revoke or withhold consent to plaintiff's continued operation of the sidewalk café. Defendants point to the findings of an administrative law judge of the DCA that plaintiff violated Rules of City of New York Department of Consumer Affairs (6 RCNY) § 2-55 (a).[5] However, the three relatively minor violations resulted only in a total fine of $400, which plaintiff paid. In addition, the administrative law judge noted plaintiff's "prompt correction" of one of the violations

---

5. The DCA found that the railings of the sidewalk café were "not removable," that the wait staff served customers "outside of the area designated for the sidewalk café," and that the café's "service aisle measured less than 36 inches in width."

before the fine was imposed. There is no evidence that defendants were harmed by the violations or that plaintiff's conduct has rendered defendants susceptible to increased insurance premiums or heightened liability.

Accordingly, the judgment of the Supreme Court, New York County (O. Peter Sherwood, J.), entered December 9, 2013, upon stipulated facts, permanently enjoining defendants from revoking their consent to plaintiff's operating a sidewalk café, should be modified, on the law, to declare that the lease permits plaintiff to use the sidewalk for the operation of a sidewalk café and requires defendants to consent to that use, and otherwise affirmed, with costs.

GONZALEZ, P.J., DEGRASSE, FREEDMAN and RICHTER, JJ., concur.

Judgment, Supreme Court, New York County (O. Peter Sherwood, J.), entered December 9, 2013, modified, on the law, to declare that the lease permits plaintiff to use the sidewalk for the operation of a sidewalk café and requires defendants to consent to that use, and otherwise affirmed, with costs.